## AVERY *v.* JACOB *et al.*

### *(Superior Court of New York City, General Term.* May 4, 1891.)

**1. ATTORNEY AND CLIENT—CONTINGENT FEE—PROOF OF CONTRACT.**

In an action for the value of services rendered by plaintiff as a lawyer to defendant's testatrix in a certain action brought by testatrix, the answer alleged a special contract, by which plaintiff agreed to prosecute such action until it was finally ended, and that he would make no charge unless testatrix recovered, and that he should receive no pay except out of such recovery as might be had in favor of testatrix. On March 22, 1884, while the action in question was pending, plaintiff wrote testatrix, (his client:) "I am willing to prosecute the action upon an agreed percentage of the recovery. The trouble is, we have no agreement." On April 24th testatrix wrote plaintiff: "I think it will be about fair, if I am successful in this suit, * * * to allow you 25 per cent. on the amount recovered. * * * Should this case be decided against me, you are not to make any further charges against me for your services." On November 8th plaintiff sent to testatrix a letter written by him on June 2d preceding, and on the same day (November 8th) he wrote to her, referring to a letter from her, which he could not then find, and saying of his own letter of June 2d, "I am sure it plainly states our talk." On November 29th plaintiff wrote testatrix: "You have had my proposition for some time, and have not accepted of it. * * * I now withdraw the offer of June 2, 1884, and shall expect to be paid for my services in any event. * * * I had supposed we had a contract, or I should have expected some pay long ago." On December 1st testatrix wrote to plaintiff, saying: "Your note of 29th November was received, in which you say you supposed we had a contract. * * * You seem to forget the delay was entirely on your part." On January 30, 1885, testatrix wrote plaintiff: "Your note of the 28th was received. * * * I had agreed to your contract, and you were to add, if we were not successful, you would not charge anything further. * * * You will please have the goodness to do so, and send it to me." Plaintiff's note of the 28th, referred to, was not in evidence. After his letter of November 29th, plaintiff tried the case, and took an appeal from the judgment rendered. *Held,* that no special or contingent agreement was shown, and plaintiff was entitled to recover the value of the services by him to testatrix.

**2. SAME—ABANDONMENT OF·CASE BY ATTORNEY.**

Where an attorney, who is employed in the prosecution of an action without any special agreement as to compensation, has conducted a trial of the cause, and has obtained the reversal on appeal of an unfavorable judgment, he may, without forfeiting his right to compensation, refuse to proceed with another trial until he is paid for the services rendered.

**3. SAME—DEATH OF CLIENT.**

Where there is no special contract between an attorney and his client in regard to the duty of the attorney to proceed with the action in which he is employed until its final determination, the death of the client terminates the relation, and the attorney is entitled to compensation for services rendered up to the time of the client's death, and the executors of the deceased client cannot require the attorney to proceed with the cause.

**4. SAME—WANT OF PROFESSIONAL SKILL.**

Want of professional skill cannot be predicated on an attorney's proceeding to try a cause on a theory which is contrary to an alleged principle of law, where both the trial justice and the general term of the supreme court deny the alleged principle of law, and sustain the attorney's theory.

**5. SAME—PROSECUTING CLAIM BARRED BY FORMER JUDGMENT.**

It is not malpractice for an attorney to sue several defendants on a claim which has been decided adversely to plaintiff in a former action, where it appears that such former judgment is a bar in the second action as to one of the defendants only, and not to the others.

**6. SAME—QUESTION OF EXPEDIENCY—JOINT AND SEVERAL ACTIONS.**

Where an action may be maintained against several defendants jointly, in which judgments for different amounts would be recoverable against the different defendants, or the action may be brought against each defendant separately, an attorney, in bringing such action against defendants jointly, is not chargeable with malpractice, in that bringing a joint action operated on the minds of the jury injuriously to plaintiff, as that is a matter of judgment, and does not involve a question of professional skill.

Appeal from judgment on report of referee.

Action by George P. Avery against William H. Jacob, as executor, and Josephine F. Clason, as executrix, of the will of Elizabeth Carter, deceased, to recover the value of services rendered to testatrix by plaintiff as an

attorney and counselor at law.   The cause was tried before Thomas Allison, Esq., as referee, who filed the following opinion:

"This is an action to recover the value of services rendered by plaintiff, as a lawyer, to the defendants' testatrix, Mrs. Carter, and the disbursements made thereabout.   All of these services and disbursements were rendered and made in one action in favor of Mrs. Carter against Sheriff Bowe and his deputy, Aarons, and his auctioneer, Sullivan.   In the complaint the services are classified, and those of each class stated as if rendered on a separate retainer; but their value as a whole only is stated.   The answer puts in issue the employment of plaintiff by Mrs. Carter, and the rendition of the services claimed for having been pursuant to such employment.   It admits that plaintiff acted as attorney in the prosecution of said action.   It denies the value to be the sum claimed for these services.   It admits the presentation to and rejection by defendants of a claim for these services.   It sets up that these services were paid for in full.   It avers that plaintiff agreed to prosecute said action until it was finally ended, and that he would make no charge for his services therein unless they proved of value to Mrs. Carter, and that they have not proven of any value to her, and that plaintiff wrongfully abandoned said action, and refused to revive and continue the same under said agreement, though defendants requested him to do so.   It avers that plaintiff agreed to prosecute said action, and make no charge for his services therein unless Mrs. Carter recovered therein, and to look for his compensation to such recovery.   It also sets up as a counter-claim that Mrs. Carter had a good cause of action against Sheriff Bowe for $5,000, for converting certain specified property, for which he agreed to bring and prosecute an action, but did not do so; and that by reason of the wrongful acts of plaintiff, his inexcusable omission, inadvertence, neglect, or want of ordinary and reasonable professional skill, Mrs. Carter lost her cause of action, to her damage in $5,000.   The amended reply admits that Mrs. Carter had the said cause of action, and requested the plaintiff to bring an action thereon in Richmond county, but denies that he agreed so to do.   It also avers that Mrs. Carter did employ him to bring the action referred to in the complaint, and for his services in which this action is brought, and that he did bring the same, and prosecuted it until she died.   It also denies that he failed to bring any action which she employed him or he agreed to bring, or that Mrs. Carter sustained any damage, or lost any cause of action, by any negligence, omission, or want of skill on his part.   It also pleads the statute of limitations as a bar to said counter-claim.   The case, as presented by the pleadings, evidence, and arguments of counsel, has been a very complicated and intricate one, which required great labor and care, and made it a difficult task to unravel, so as to get at the real issues and determine the bearings and effect of the evidence and the validity of the arguments of counsel thereon.   That plaintiff was employed by Mrs. Carter to bring the action for his services in which he seeks to recover herein, is beyond doubt on the evidence in this case.   Nor is there any doubt that in the prosecution of that action he rendered all those services which he alleges he did, and for which he now seeks to recover.   This case will be more easily disposed of and more clearly understood by disposing of the issues in a different order than that in which the answer presents them.

"The answer sets forth two special agreements which it alleges plaintiff made: *First*, that he would prosecute the action in question until it was ended, and would make no charge for his services therein unless they proved of value to Mrs. Carter; *second*, that he should receive no pay except out of such recovery as might be had in her favor in said action.   The question is, did he make either of those agreements?   And, if he did, then do the facts in this case prevent his recovery under said agreements, or whichever, if either of them, he made?   That he made one or the other or both of these agreements, so far as they relate to his compensation being contingent, is

claimed to have been established by the evidence, which will now be considered. That he at least agreed to conduct said action to a full or final determination is claimed not only as a necessary result of said special agreements, or either of them, but also as a necessary result of a mere general retainer of him, without any special agreement, to begin and prosecute said action. It is fully established that negotiations were had between Mrs. Carter and the plaintiff as to the prosecution of said action by him under a special agreement as to his compensation. These commenced some time after that action had been commenced, and, as appears, after it had been tried once at least. The question is, did the parties ever come to an agreement on the subject? The negotiations appear to have commenced in or about March, 1884, at which time the appeal from the first judgment against Mrs. Carter in said action was pending, and to have terminated either in December, 1884, or January, 1885, after said judgment had been reversed, and while preparations were pending for the second trial of the action. On March 22, 1884, plaintiff wrote Mrs. Carter, saying: 'As dark as it looks in this action, I am willing to prosecute the action upon an agreed percentage of the recovery. The trouble is, we have no agreement. Without an agreement of the kind mentioned, lawyers want some pay; at least as soon as a judgment is had for or against.' On April 24, 1884, Mrs. Carter, apparently in consequence of the last-mentioned letter, wrote to plaintiff, saying: 'I think it will be about fair, if I am successful in this suit against Peter Bowe, the late sheriff, to allow you twenty-five per cent. on the amount recovered, less the amount you have already received, and also any other expenses or costs paid by me. Should this case be decided against me, you are not to make any further charges against me for your services in this matter.' On June 2, 1884, plaintiff wrote to Mrs. Carter a letter, which cannot now be found, but the contents of which were proven by Mr. Wyatt to be an offer to carry on the action in question to the end for 25 per cent. of the result; no charge to be made unless successful, with a proviso that the action should not be settled except by mutual consent. It is clear from the evidence that this letter was not sent to Mrs. Carter until November 8, 1884. The letters of plaintiff of that date and of November 29, 1884, and that of Mrs. Carter of December 1, 1884, hereafter quoted from, show this. It was sought on the trial to prove that Mrs. Carter, by a letter dated November 13, 1884, accepted the plaintiff's offer made by this letter of June 2, 1884. But there was no evidence that the November 13th letter ever reached the plaintiff, or ever got further than the hands of Mrs. Carter's messenger, her husband. On this ground said letter was excluded from evidence. Defendants put in evidence a letter written by plaintiff to Mrs. Carter, saying: 'I have looked for your letter this A. M., and do not find it. I have it somewhere, but have no time to look further. I know I wrote an answer, and find my letter ready to be sent, but for some reason not mailed. By whose carelessness I'll not say, but assume it myself, as the boy is not with me now. I am sure it plainly states our talk.' Clearly this letter cannot, being dated November 8, 1884, refer to the letter of Mrs. Carter of November 13, 1884, as the one he then had, but could not find. It is also clear, from the subsequent letters hereinafter quoted from, that the letter which it says 'plainly states our talk' is plaintiff's letter of June 2, 1884, above mentioned, and the contents of which were proven by Mr. Wyatt. Defendants also put in evidence a letter written by plaintiff to Mrs. Carter, dated November 29, 1884, which says: 'You have had my proposition for some time, and have not accepted of it; certainly long enough to have made up your mind. From a note brought to me the other day I conclude you do not intend to accept it. Again, it was our understanding the suit was to be carried on under my sole directions. I am afraid that can't be in comfort. You will please take notice that I now withdraw the offer of June 2, 1884, and shall expect to be paid for my services in any event. I have not been paid anything so far, except what I have

paid to others. I shall expect to be paid some on account soon. I want something handsome. I want no conversation with Mr. Carter about it. Of course you can talk with him, and then act. I had supposed we had a contract, or I should have expected some pay long ago. I have done many things I should not have done only upon that supposition. I think it is better to not have a contingent agreement, for comfort all around, for I should insist upon having my own way in all things in case of a contract.' When this was written, the new trial had not yet been had of the case of *Mrs. Carter* vs. *Bowe.* It clearly states that the plaintiff's proposition or offer of June 2, 1884, had not been accepted up to November 29, 1884. This could not be true if, prior to that, it had been accepted by the letter of November 13, 1884, mentioned by Mr. Wyatt. It plainly withdraws the offer of June 2, 1884, and all offers to act for a contingent fee, and takes the position that no such agreement existed on November 29, 1884, though he had theretofore supposed they had agreed. On December 1, 1884, Mrs. Carter wrote plaintiff: 'Your note of 29th November was received, in which you say you supposed we had a contract, or you would have acted differently; and complain of my not answering your offer sooner. You seem to forget the delay was entirely on your part, instead of mine. If you bear in mind, when you first spoke to me on the subject, which was last spring, you wished me to write the agreement, and you then told me what you were willing to accept. I did write one to that effect, and sent it to you April 14th. You sent it back to me, to make some alterations. I did so, and sent another, with those alterations, on the 24th April, which you have in your possession; and you said you would answer it. I did not receive any answer, however, till the 8th November, which was dated June 2d, which was entirely different from your first offer. I think, if you will try and recollect our conversation on this subject, you will not blame me, for I wrote the agreement according to your own dictation.' There is no claim here by Mrs. Carter that she sent on November 13th any letter accepting the offer made June 2, 1884, for by the letter of that date sent to her November 8, 1884, she clearly repudiates any such agreement as that in the letter of June 2, 1884.

"Thus far, all that appears is negotiations and disputes as to the terms on which a contingent agreement was to be made, and a clear declaration by plaintiff that he withdrew all offers, and declined to make any contingent agreement. On January 30, 1885, Mrs. Carter wrote plaintiff: 'Your note of the 28th was received, and I was utterly surprised when I read its contents; but I think I can fully understand the reason of your writing to me in that way. When I proposed, the last time you were here, to get some one to assist you, you seemed to take it in altogether a different light from what it was intended. I thought it was doing you a favor. I had agreed to your contract, and you were to add, if we were not successful, you would not charge anything further for your services, and said you would take that copy, and write another, including that in it, and send it to me. You will please have the goodness to do so, and send it to me.' What the letter here referred to of the 28th contained does not appear. This letter of January 30, 1885, does not change the situation from what it was under the plaintiff's letter of November 29, 1884. Mrs. Carter's reiteration in her letters that there was a contingent fee contract does not outweigh the plaintiff's claim made by his letter of November 29, 1884, and his distinct notice thereby given that he would not make such an agreement with her. It simply shows that the parties differed as to whether or not there was a contract, and as to the terms upon which a contract was to be made. Plaintiff, on November 8th, claimed that his letter of June 2, 1884, stated the contract correctly; and Mrs. Carter, of December 1, 1884, claimed that her letter of April 24, 1884, so did, and that it was entirely different from that stated in plaintiff's letter of June 2, 1884, and that plaintiff had promised to but never had sent any answer to hers of April 24th,

unless the letter of June 2, 1884, was such.   The defendants had the burden of proving a special agreement, if there was one, and they have failed to sustain it.   The criticisms of defendants' counsel upon the testimony of the plaintiff himself, even if true, would not establish the affirmative propos tion that there was such a contract.   The fact that the plaintiff is not shown to have made any demand for payment for his services from Mrs. Carter after his letter of November 29, 1884, does not establish such a contract.   It could only be of consequence where there was a conflict of evidence as to the existence of such a contract, and then it might weigh as corroborative of direct evidence that such a contract existed, but in itself it is not such evidence, and does not supply the absence of it.   After plaintiff's positive statements and notice by his letter of November 29, 1884, Mrs. Carter could not allow plaintiff to proceed with the cause, as she did, to the extent of thereafter going through the laborious trial before Judge LAWRENCE, and the appeal from the judgment thereon rendered against her, and the preparation for a third trial, and claim that he did all this under a pre-existing agreement for a contingent fee.   After that letter she was estopped by allowing him to proceed, unless she could either prove a new agreement for a contingent fee, or that he had abandoned the  position taken by  him in that letter before she permitted him to so proceed.   If she did  not intend to accept his continued services on the terms of that letter, she was bound to either refuse to let him proceed, or else give him  distinct notice that she would  accept his subsequent services only upon the terms she insisted they had agreed on.   Yet nothing is shown to have been written by her or said by her to that effect during all the time these subsequent services were being rendered in that action.   The defense that there was a special or contingent agreement is not sustained.   With it falls the defense that plaintiff did not prosecute the action to a final result, so far as that duty is based on or implied from the terms of the alleged special agreement.

"Is there a valid defense, such as last mentioned, even though there was no special agreement?   The court of appeals says: 'The rule of law undoubtedly is, as claimed by the defendant, that an attorney who is retained generally to conduct a legal proceeding enters into an entire contract to conduct the proceeding to its termination, and that he cannot abandon the service of his client without justifiable cause and reasonable notice.   *   *   *   If an attorney, without just cause, abandons his client before the proceeding for which he was retained, has been conducted to its termination, he forfeits all right to payment for any services which he has rendered.   *   *   *   What shall be a sufficient cause to justify an attorney in abandonding a case in which he has been retained, has not been laid down in any general rule, and cannot be.   If the client refuses to advance money to pay the expenses of the litigation, or if he unreasonably refuses to advance money during the progress of a long litigation, sufficient cause may thus be furnished to justify the attorney in withdrawing from the service of his client.'   Tenney v. Berger, 93 N. Y. 529, 530.   The only refusal to proceed with or abandonment of the action of Carter vs. Bowe and others, charged by the answer herein, or sought to be proven against plaintiff, is that when, after Mrs. Carter's death, the executors, defendants herein, demanded, by their letter of February 21, 1889: 'The executors require you to proceed with the prosecution of the action of Carter vs. Bowe, under the special contract made for that purpose between you and Mrs. Carter,'—he refused to comply with such demand, and that either prior or subsequent to said demand he refused, after Mrs. Carter's death, to proceed with said action, unless the executors paid him $500 on account of his services.   It having been found that no special agreement existep between plaintiff and Mrs. Carter upon the subject, plaintiff was not bound to comply with said written demand.   Nor was his refusal to proceed unless $500 were paid him on account an unjustifiable refusal.   It was fully justified by the circumstances, within the opinion in the case above quoted from.

Moreover, there being no special agreement on the subject, the duty to proceed was terminated by the death of Mrs. Carter. The relation of attorney and client was between her and plaintiff, and never between her executors and plaintiff. That relation terminated by her death. To entitle him to proceed with the action required a new employment by her executors, and such employment would be upon their personal credit and responsibility. It was optional with him to make such new agreement or not. He had never agreed to conduct that litigation, and look to them personally for payment for his services. He had never agreed to act as their attorney and counsel at all. The relation assumed by him when retained by Mrs. Carter was a personal and confidential one. The obligation to perform entirely the contract then and thereby made was contingent upon and assumed the continuance in life of both parties to it until it was completed. There was a personal element in that contract on both sides. Moreover, the debt for services rendered while Mrs. Carter lived was a claim against her estate in plaintiff's favor, and accrued and became due as soon as she died. It alone could be recovered against her executors as such. Subsequent services to the executors, even in the same action, could not be joined with a claim for the services rendered during her life, and sued for in an action against her executors as such. They could not be sued for such subsequent services as executors at all in any form. The defense of a refusal to proceed, and abandonment of the action of *Carter* vs. *Bowe*, must therefore be overruled.

"Much contention was made over the question whether plaintiff had not forfeited all right to payment, or some right thereto, by a failure to exercise the requisite skill in the case of *Carter* vs. *Bowe*. The answer sets forth no such defense. The counter-claim does allege that plaintiff was guilty of malpractice, or want of the requisite professional skill, but not as to the action of *Carter* vs. *Bowe*, which he brought, and for his services in which he here seeks to recover, but as to some cause of action in Mrs. Carter's favor against Bowe, for which no action was ever brought by him as therein alleged. But the issue was fully tried and argued before and submitted to me, and must be decided, whether covered by the answer or not. In January, 1880, Sheriff Bowe levied upon certain goods at 34 Front and 80 Pearl streets, under process against Mrs. Carter's husband, Wellington A. Carter. In March following he made a similar levy at the same places under similar process upon certain other goods. Of the goods thus levied upon Mrs. Carter claimed title to some directly from her husband. To others she claimed title through Miss Clason, who acquired title thereto from Wellington A. Carter. Other of these goods she claimed never belonged to her husband, but had been consigned to her, and that the consignors thereof had transferred to her their title to these goods and their claims against the sheriff for levying thereon under process against Mr. Carter. On the day of the first sale, in January, 1880, plaintiff commenced an action in Richmond county against the sheriff's indemnitors and their sureties for damages arising from the sale that day made of such of said goods as she claimed to own. In her complaint, in addition to the claim that she was entitled to damages because her property had been sold on process against her husband, she also claimed damages because the sale had been made in an unlawful manner,—in bulk, and not in parcels, and without opportunity for the bidders to know what was to be bid for. No claim, however, was made in that action for any damages for the sale of any goods which she claimed had never belonged to her husband, but had been consigned by third parties. While that action was pending, and before it was tried, plaintiff, at the instance of Mrs. Carter, brought another action in New York county, which was against Sheriff Bowe and his deputy, Aarons, and his auctioneer, Sullivan. This action is the one to recover for his services in which plaintiff brings this action, and the one in which it is now to be decided whether he was so unskillful as not to be entitled to the pay for his services which he claims.

This action was to recover damages for the sale of all of the goods sold by the sheriff on both sales,—that in January and that in March; and included not only the goods which concededly once belonged to her husband, but also those which were claimed never to have been his, but to have been consigned as before stated.   In it damages were claimed not only on the ground that at the times the goods were sold none of them belonged to Mr. Carter, but also on the ground that the sale had been improperly made; the claim in this respect being the same in form as the similar one made in the Richmond county action. The two actions differed in the fact that in the first the defendants were the sheriff's indemnitors and their sureties on the January sale; and only a part of the goods to which Mrs. Carter claimed title from her husband, both directly and through Miss Clason, were included, and none of the consigned goods were included; whereas, in the second, the defendants were the sheriff and his deputy and auctioneer, and all of the goods to which Mrs. Carter claimed title from her husband, both directly and through Miss Clason, were included, and also the consigned goods.   Thus in the second suit—that of *Carter* vs. *Bowe and others*—damages were claimed by Mrs. Carter not only for the same goods as those covered by the Richmond county action, but also for other goods claimed by her under the same title as the first-named goods were claimed by her, and also for other goods claimed by her under an entirely different title.   In each action the defense was that the goods in question therein were the property of Wellington A. Carter, or that he had a leviable interest therein, and that they had been levied upon and sold under process against him, and that the sale thereof had been conducted in a lawful and proper manner.   While both actions were pending, the Richmond county action was first tried, and resulted in a verdict and judgment for the defendants therein. Thereafter, and while such judgment stood in full force, the plaintiff brought the New York action—*Carter* vs. *Bowe and others*—to trial, and endeavored to recover the full damages claimed therein.   In this he failed.   The trial court held that the Richmond county judgment was a bar to the recovery against the sheriff of any damages for the sale of the goods as to which damages had been claimed in the Richmond county action; and on appeal this ruling was sustained by the general term.   The trial court, however, held that said judgment was not a bar as to any damages claimed for goods not included in said Richmond county action.   It made no exception in this ruling of any goods which were claimed by the same title as those covered by the Richmond county action were claimed.   This ruling was also sustained by the general term on appeal.   Upon the concession of counsel, the trial court held that the Richmond county judgment was not a bar to a recovery against the sheriff's co-defendants, his deputy and auctioneer, even as to the goods covered by the action in which it was rendered, provided the jury found that the sale had been improperly and unlawfully conducted.   On this point the general term, on the appeal from the judgment rendered on that trial, expressed no opinion.   But the general term reversed the judgment rendered for defendants upon the ground that plaintiff's case had been greatly prejudiced by the admission of improper evidence, and ordered a new trial.   Mrs. Carter died before such new trial was had.   *Carter* v. *Bowe*, 41 Hun, 516.   The defendants herein base their defense of malpractice or want of due and requisite skill in part upon the ground that the law was so well settled that the Richmond county action and the judgment therein were a bar to any claim for damages in the action of *Carter* vs. *Bowe* for any goods to which Mrs. Carter claimed title, upon the same transfers as she claimed title to the goods involved in that action, that to prosecute the action of *Carter* vs. *Bowe* in violation of that rule was malpractice.   Irrespective of any other answer to this claim, it is sufficient to say that Judge LAWRENCE and the general term each held that said judgment was a bar only as to the goods actually involved in the action in which it was rendered; that is, those sold on the first sale, in January, 1880.

Whether this be good law or not, the plaintiff cannot be charged with a want of requisite skill in not acting upon the theory that the law was other than what Judge LAWRENCE and the general term held it to be.

"But it is urged that, nevertheless, there was malpractice in prosecuting the action of *Carter* vs. *Bowe* to recover damages for such goods as the court did hold the recovery of damages for was barred by the judgment mentioned. But the sheriff's counsel conceded, and Judge LAWRENCE charged the jury that, as against two of the defendants in *Carter* vs. *Bowe*, that judgment was no bar as to any of the damages claimed, provided the jury found that the claim was well founded that the sale had been improperly and illegally conducted. The charge of want of skill in including these goods in the action against three defendants cannot be held good when concededly the judgment mentioned was no bar as to two of those defendants, and that plaintiff therein had, so far as the question of bar by former judgment went, the right to recover against two of the defendants all of the damages claimed by her, and as against the other defendant a part of such damages. Conceding for the moment that as to a part of the damages claimed it was clear that no recovery could be had by reason of the former judgment, yet it does not follow that the defense of malpractice is sustained. The question of what policy to pursue, whether to bring one action against the sheriff, and another against his deputy and auctioneer, or one action against all three, was one for the plaintiff's discretion to decide. The only proper legal effect of bringing one action, instead of two, would be that in that action judgments for different amounts would be recovered against the respective defendants, and not that any existing right of recovery against either would be impaired or lost. As to what effect this policy would have upon the minds of the jury was not a matter for a misjudgment upon which the plaintiff could be held chargeable with malpractice. The claim that thereby there would be any increased labor or expense is not well founded. Whether judgment was recovered against all three defendants for the full amount, or against only two of them for that sum, and against the third for a less sum, the labor and expense would be the same. To prosecute the claim against two for the full amount required all the labor and expense which there was. To have brought separate actions, one against the sheriff, and the other against his deputy and auctioneer, would have required double labor and expense as to that part of the damages for which all three were liable. It can neither be held that plaintiff erred in bringing the action as he did, nor that, if he erred in so doing, his error was of that kind which constitutes malpractice. It was at most mere misjudgment on a question of policy as to the course of proceeding.

"But there is an even stronger reason why this defense cannot be held good. Notwithstanding Judge LAWRENCE and the general term held the Richmond county judgment to be a bar as to the recovery of any damages as to the goods covered by the action in which that judgment was rendered, it was a fair question to be raised before them, and is still an open one for the court of appeals, if not for the supreme court, in that action, whether or not even the sheriff is not liable for damages as to those goods by reason of the alleged irregular and unlawful manner of sale. The Richmond county action having been against the sheriff's indemnitors and their sureties on the first sale, it is at least open to question whether they were liable for any abuse of process by the sheriff. It is by no means certain that they were so liable. If not liable therefor, then the judgment in their favor did not involve any determination as to whether or not there had been any such abuse of process, and that question could not have been tried in that action, and the judgment therein could not be a bar upon that question. Nor would the fact that the judgment in that action was a bar, even if that be conceded, on the question of the validity of the transfer of title to that property to Mrs. *Carter* as against the creditors of her husband, be of any consequence in an action against the

sheriff for abuse of process.    As against her husband, and all others but his creditors, or those justifying under their rights, these transfers were all valid, and conveyed all his rights and all his title to the goods in question.    The sheriff could not justify any abuse of process, even in an action against him by Mr. Carter, under any alleged right of the creditors.    The creditors' only right would be to enforce their rights by a lawful use of process in their favor.    Whatever right Mr. Carter would, as owner, have had to sue for an abuse of process by the sheriff, had no transfer been made, either directly or indirectly, of these goods from him to his wife, that same right was in Mrs. Carter by conveyances made to her, even if they were void as against creditors lawfully enforcing their demands.    The opinion of the general term by DAVIS, J., on the appeal from the judgment against Mrs. Carter rendered on the first trial of her action against Bowe and others, clearly shows that there is enough in this question to justify the action of the plaintiff in suing for all of the damages against all of the defendants.    It seems also very difficult to give any reason why the Richmond county judgment should not be a bar as against the deputy and auctioneer for such abuse of process as to the property covered by the action in which that judgment was rendered, which the sheriff's counsel on trial conceded it was not, and yet should be such a bar as against the sheriff.    Instead of a dereliction, it seems to have been the duty of the plaintiff to raise this question.    Plaintiff's counsel urged that the action of *Carter* vs. *Bowe* was commenced before the Richmond county judgment was rendered.    While this is true, it is no answer to the claim that it existed when the action of *Carter* vs. *Bowe* was tried.    If to commence the action when this judgment existed would have been culpable error, then to try it when the judgment existed would have been equally wrong.    The fact urged by plaintiff that after the Richmond county judgment was rendered, and before the action of *Carter* vs. *Bowe* was commenced, Mr. Carter assigned to Mrs. Carter all his interest in the goods in question, and all claims on his part against the sheriff in the premises, is of no moment.    If the sheriff's acts, when done, were lawful and valid against the then owner of these goods, then this assignment subsequent to those acts carried no cause of action.    On the other hand, if the acts were then unlawful and invalid against such owner, Mrs. Carter was such owner.    We are thus remitted to the question just considered, whether there was a cause of action against the sheriff for an abuse of process, and did it survive the Richmond county judgment? It is urged that Mrs. Carter had admittedly a good cause of action for at least the damages as to the consigned goods, and it has never been recovered.    It does not appear that so far this has been the plaintiff's fault.    The general term has twice reversed the judgments obtained against Mrs. Carter, and each time has rather pointedly condemned the rulings made on the trial against plaintiff's objections and exceptions.    It is also urged that the value of the goods was exaggerated, and that the joinder of the cause of action which has been held to be barred with that which clearly was not barred, prejudiced the case of Mrs. Carter.    Conceding all that is involved or implied in this claim except the conclusion of malpractice based thereon, the latter does not follow.    The law did not permit Mrs. Carter to be deprived of her just rights because she claimed more; and her counsel was not bound, at the peril of being charged with malpractice, to assume that she would thereby be deprived thereof.    Nor was he bound, at his peril, to foresee or prognosticate correctly what the whims or prejudices of the jury or a trial judge might be, and what consequences might flow therefrom.    This was a pure question of policy in the view urged, and error of judgment in relation thereto could not be held to be malpractice.

"There is one other point urged by plaintiff, which seems to be well taken. He claims that the goods not covered by the Richmond county judgment or action, but which Mrs. Carter claimed under the same title as she claimed

those which were covered thereby, and damages for which both the general term and Judge LAWRENCE held she was entitled to maintain an action, were so mixed up with the others that they could only be safely distinguished and separated therefrom as the evidence on the trial should disclose how this could be done.  It is claimed that this contention is supported by the decision of the general term on the appeal from and reversal of the order for a severance of the causes of action.  *Carter* v. *Bowe*, 47 Hun, 629, 630.  This decision and opinion were rendered after the general term had held that a part of the cause of action was barred as against the sheriff by the Richmond county judgment.  There is much weight in the claim thus made, but it is unnecessary to discuss it, in view of the results already reached on other points.  The defense of malpractice in the conduct of the action of *Carter* vs. *Bowe and others* is not sustained.

"The next question is as to the counter-claim.  There is no evidence on which to base any finding that the plaintiff ever agreed to bring or prosecute any action for Mrs. Carter other than the two which he did bring as above stated.  The allegations as to the counter-claim all relate to the action which it is charged the plaintiff failed to bring; and, as there was none such, there could be no malpractice as to it.  If the allegations of malpractice in the counter-claim were meant to relate to the two actions which he did bring, or either of them, they are disposed of by what has already been said on that point as to the action of *Carter* vs. *Bowe*, and that no evidence has been given or argument or claim made before me as to any malpractice in the Richmond county action.

"Nothing remains but the question of how much should plaintiff recover.  Under all the circumstances and all the evidence, the plaintiff's recovery for services should be fixed at the amount charged in his bill rendered to the executors, which, when correctly footed, is $3,521.64; for his unpaid disbursements the sum of $60.80; making a total of $3,582.44, to which interest is to be added.

"No one can regret more than the referee does that so lengthy an opinion was necessary, but, as the case was presented, it seemed to be unavoidable."

Defendants appeal.

Argued before SEDGWICK, C. J., and FREEDMAN and McADAM, JJ.

*E. Luther Hamilton,* (*Austen G. Fox,* of counsel,) for appellants.  *E. H. Benn,* for respondent.

FREEDMAN, J.  The questions presented by the appeal bring the facts, which are complicated.  There is no controversy as to the law applicable to the case.  The facts and all questions arising thereon have been fully discussed by the referee in an elaborate opinion, and a careful examination of the whole case has failed to disclose any error committed by him.  The judgment should be affirmed, with costs, on the opinion of the referee.  All concur.