In the Matter of the Application of George W. Dunn et al., as Receivers of the Hudson River Electric Company, Respondents, to Compel the Substitution of Abram J. Rose and George B. Curtiss in the Place and Stead of Edgar T. Brackett, Appellant, as Attorney for Defendant in an Action Pending against Said Hudson River Electric Company.

Attorney and client — when client may discharge his attorney and employ another — when court will not enforce a substitution of attorneys unless compensation of first attorney is paid — when attorney who voluntarily withdraws from case is entitled to compensation.

1. A client may at any time for any reason which seems satisfactory to him, however arbitrary, discharge his attorney. If the latter has not been guilty of any tangible violation of the relation, this substitution must be made on conditions which are fair to him, and, in the case of the attorney, the general rule is that he may terminate his relationship at any time for a good and sufficient cause and upon reasonable notice.

2. The courts will not enforce a substitution of attorneys where the first attorney is without fault, unless the amount due the attorney for his services and expenditures is either paid or secured. But, if the attorney has refused without just cause to proceed with the prosecution of the case, a client has the right to the substitution of a new attorney in his place, and the old attorney by his voluntary withdrawal forfeits his lien on the papers in the suit.

3. Where an attorney, who had been retained to defend a cause for a corporation, declined to continue to act as attorney for receivers of the corporation who were thereafter appointed by reason of its insolvency, he may not be required to deliver possession

of the papers in the action to substituted counsel without payment of compensation already earned and without preservation of his lien thereon.

*Matter of Dunn*, 140 App. Div. 944, modified.

(Argued March 18, 1912; decided May 14, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered February 11, 1911, which affirmed an order of Special Term granting a motion for substitution of attorneys in a suit pending and directing that all the pleadings and papers in said action be turned over to the attorneys substituted.

The facts, so far as material, are stated in the opinion.

*Edgar T. Brackett* and *Hiram C. Todd* for appellant. The exercise of the right inherent in an attorney to say that he will not act for certain persons, does not work forfeiture of his rights, nor of his property, nor compel him to surrender to the offensive individual any of the fees which he has already earned. (*Avery* v. *Jacob*, 15 N. Y. Supp. 564; *Tenney* v. *Berger*, 93 N. Y. 524; 3 Pom. Eq. Juris. [2d ed.] § 1333; *U. S. Trust Co.* v. *N. Y., W. S. & B. R. R. Co.*, 101 N. Y. 478; *Decker* v. *Gardner*, 124 N. Y. 334.)

*George B. Curtiss* and *Abram J. Rose* for respondents. Mr. Brackett had, without justifiable cause, refused to continue as attorney for the defendant, discharged himself, and thereby lost whatever lien he might otherwise have had on the papers in the case; therefore, the order requiring him to turn the papers over to the substituted attorneys should be sustained. (*Matter of Barclay*, 42 App Div. 611; *Matter of H——*, 93 N. Y. 381; *Tuck* v. *Manning*, 53 Hun, 455; *Halbert* v. *Gibbs*, 16 App. Div. 126.)

HISCOCK, J.   At sometime one Hebert, as administratrix, brought an action against the Hudson River Electric

Company to recover damages for the alleged negligent killing of her husband. The appellant Brackett appeared as attorney for the defendant in said action. It was tried and a verdict recovered by the plaintiff which thereafter was set aside and a new trial granted by an order which on appeal was affirmed by the Appellate Division.

While the action was in the condition left by said last-mentioned order an order was made in the Circuit Court of the United States, which, after reciting that said defendant and other allied companies respectively were being mismanaged and were insolvent, appointed the above-named respondents receivers of said defendant and of all of its property with directions to take possession thereof and manage the same, and commanding the defendant and all of its officers and agents and employees to deliver up to said receivers possession of all of said property and to refrain from interfering with the possession by said receivers of said property or with the discharge of their duties as such. It is assumed that said order became effective and that said receivers took possession of such property and entered on the complete and exclusive management of the affairs of said corporation.

The relations between appellant and said receivers were or became unfriendly. While it does not appear what may have been the original cause of this, it is sufficiently evident that the feeling of antagonism was both pronounced and reciprocal. Under these circumstances the appellant notified respondents of his unwillingness to continue to act as attorney in the above-mentioned action and requested them to substitute other counsel in his place and provide for payment for his services already rendered. The receivers disclaimed ability to do the latter, but insisted that appellant continue to act as counsel in the case, expressing their ability and willingness to pay him for such services as might be thereafter rendered. The attempt was made to solve the disagreement and situation thus precipitated by the order already referred

to whereby other counsel were substituted in place of appellant and he was required without payment of compensation thus far earned and without preservation of any lien thereon to deliver possession to such new counsel of the papers in the action, and the question is presented here whether he could thus be deprived of his lien.

We all seem to be in accord concerning the general principles which govern the substitution of attorneys and the preservation or loss of a lien by the attorney who is displaced. I accept the statement of these principles made by the chief judge in his opinion when he says, "The present practice seems now well settled that the courts will not enforce a substitution of attorneys where the first attorney is without fault, unless the amount due the attorney for his services and expenditures is either paid or secured. At the same time it is equally well settled that if the attorney has refused, without just cause, to proceed with the prosecution of the case a client has the right to the substitution of a new attorney in his place (citations) and thereby the old attorney by his voluntary withdrawal forfeits his lien on the papers in the suit."

The controversy arises, as so often is the case, over the application of these general principles to specific facts and it must be largely decided by the answer which is given to the narrow question whether the appellant refused "without just cause" to proceed with the defense of the Hebert action under the respondents as receivers. If he was justified in declining to continue and extend the obligations of his original retainer under and for the benefit of the receivers, then it must be conceded that they had no right to deprive him of his lien because he did so. It seems to me that neither principle nor authority compelled him to serve them as counsel simply because he had been originally retained by the corporation to the management of whose affairs they had succeeded.

That the relationship between attorney and client is one

of an unusual character has been so often affirmed that a statement of the proposition is commonplace. There lie at its foundation the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney which render the relationship a personal and confidential one and make its obligations on the part of the attorney of the most exacting kind. This conception of it is evidenced by the facts amongst others that the statute in the case of. witnesses compels the observance by the attorney of the confidences which have been intrusted to him and that the courts by virtue of their inherent power over attorneys compel by summary and rigorous proceedings their fulfillment of obligations springing out of the relationship, while they leave to ordinary processes the enforcement of contractual obligations undertaken by one who is an attorney when they lie outside of such relationship. (*Matter of Niagara, L. & O. Power Co.*, 203 N. Y. 493, 496.)

It is apparent that a relationship so personal and confidential may be more easily disturbed than a less sensitive one, and that its effectiveness may be so impaired by any change which destroys the confidence of the client or which requires the unwilling transfer by the attorney of his allegiance in a given matter to a substituted client as to make it desirable to permit a termination of the relation rather than to attempt to coerce its continuance under adverse conditions. This policy of permitting its dissolution in a manner which would not prevail in the case of ordinary contracts has been upheld in various cases.

It is well established in the case of the client that he may at any time for any reason which seems satisfactory to him, however arbitrary, discharge his attorney. If the latter has not been guilty of any tangible violation of the relation, this substitution must be made on conditions which are fair to him. (*Tenney* v. *Berger*, 93 N. Y. 524, 529; *Matter of Prospect Avenue*, 85 Hun, 257; *Matter of Paschal*, 77 U. S. 483, 496.)

In the case of the attorney the general rule is that he may terminate his relationship at any time for a good and sufficient cause and upon reasonable notice. (*Eliot* v. *Lawton,* 7 Allen, 274; *Powers* v. *Manning,* 154 Mass. 370.)

In illustration or amplification of this general rule it has been held that a retainer accepted by an attorney will terminate with his client's death and that he is not under obligation to transfer and continue the relationship to and with the representatives. (*Whitehead* v. *Lord,* 7 Exch. 691; *Avery* v. *Jacobs,* 15 N. Y. Supp. 564.)

Also it has been laid down that a client may not introduce into a case a counsel who is professionally or personally objectionable to the attorney already retained therein, and if he attempts so to do the latter may discontinue his retainer. (*Tenney* v. *Berger,* 93 N. Y. 524, *supra.*) Of course it is unnecessary to refer at length to those other palpable violations of a client's duty to his attorney which justify the latter's withdrawal, as that the former refuses to advance the necessary funds with which to prosecute the litigation, or that he attempts to enforce the employment of unworthy methods of sustaining his litigation.

It seems to me that the principles involved in these cases when applied to the present one in the light of the general observation made by Judge EARL in the *Tenney* case, "that the rule that an attorney is bound to an entire contract should (not) be very rigidly enforced, while the client is left with the right arbitrarily to discharge him at any time," fully justified the appellant in declining to extend and give the benefit of his retainer to substituted and new clients with whom his personal relations were unfriendly, for it must be insisted that for all practical purposes there was a substitution of clients when the respondents were appointed receivers. It may be conceded that technically the corporation retained its title to property and that there was a mere legal possibility that

it might sometime be reinvested with possession thereof. Nevertheless, for the time being the receivers were in absolute possession and management of the affairs of the corporation and necessarily if the appellant continued to conduct the case he was under their orders and control and his relationship, was with them as his clients. If, as held in the *Tenney* case, the attempt of a client to inject an objectionable counsel into a case is to be regarded as so impairing the proper relationship of attorney and client as to warrant its dissolution by the attorney, it would seem certainly and easily to follow that if by the action of a court an entirely new client is introduced into a case the attorney is equally justified in declining to accept such new relationship.

Two illustrations have been suggested for the purpose of sustaining the position of the respondents and of opposing the views herein expressed.

It is said that the officers and directors of a corporation might be changed at any election and it is asked whether such a change could justify an attorney in declining to carry on a retainer by the corporation. It certainly would not, and I do not see the similarity between that case and this as applied to the question before us. An attorney who undertakes the conduct of an action in behalf of a corporation must be assumed to contemplate those changes which continually happen in the ordinary management of a corporation and to make his contract with reference thereto. Moreover, a change in the officers or directors of a corporation does not alter the identity of the client. It simply means that the stockholders who constitute and own the corporation have selected new agents for the management of their business just as the attorney has been selected. The case is very different from one where insolvency, not to be expected or assumed in making a contract, has ensued and has been followed by the selection by a judicial power outside of and superior to the corporation of persons entirely disconnected with the cor-

poration for the purpose of taking away from it the possession, control and management of its property.

It has also been asked whether the appointment of receivers of a corporation would entitle an ordinary employee of the latter to discontinue his contract of employment. The concession that this result would not follow does not at all seem to me to impair the conclusion that the relationship of attorney and client, which has been given a peculiar and confidential character, is subject to principles and rules which do not apply to an ordinary contract.

In my opinion the order should be modified by striking out the clause requiring the appellant to turn over to the substituted attorneys the pleadings and papers in the case, and as so modified it should be affirmed, with costs to the appellant.

CULLEN, Ch. J. (dissenting). I do not see how any distinction can be drawn between the right of the appellant to resist the substitution of an attorney in his place and his right to a lien on the papers in the action. The present practice seems now well settled that the courts will not enforce a substitution of attorneys where the first attorney is without fault, unless the amount due the attorney for his services and expenditures is either paid or secured. At the same time it is equally well settled that if the attorney has refused, without just cause, to proceed with the prosecution of the case, a client has the right to the substitution of a new attorney in his place (*Matter of H.*, 93 N. Y. 381; *Sessions* v. *Palmeter*, 75 Hun, 268; *Halbert* v. *Gibbs*, 16 App. Div. 126), and that the old attorney by his voluntary withdrawal forfeits his lien on the papers in the suit. (*White* v. *Harlow*, 5 Gray, 463; *Morgan* v. *Roberts*, 38 Ill. 67). Two rules, one to the effect that the withdrawal of an attorney authorizes his client to substitute a new attorney, and the other, that despite such withdrawal and substitu-

tion the attorney has a lien on the papers in the suit, would seem entirely inconsistent. In *Matter of H. (supra)* this court said of an attorney: "In other words, he discharged himself, and in such a case it is clear that an attorney cannot leave his client in the middle of a matter, because he does not supply him with money, or by reason of any other difficulty, without running the risk of losing the benefit of that relation. * * * The client's own interest was at stake in the proceedings in question, and, upon the refusal of M. to act as his attorney, he could deal with the case as he chose." (p. 384.) As it is the relation of attorney and client that gives the attorney a lien on the papers in the suit, it would seem that, if, under the decision cited, the attorney loses the benefit of that relation he, necessarily, loses his lien. Nor is there any force in the suggestion that the new attorney may get copies of the papers from the attorney for the opposite party. Why should he be compelled to resort to that attorney and why should that attorney be compelled to give him the information. It is plain that without the pleadings and the other papers in the suit, some of which might be papers of which the opposite attorney was ignorant, the client might be greatly hampered if not defeated in the successful prosecution or defense of his suit. Therefore, the order of the Appellate Division should be either reversed or affirmed in entirety.

Mr. Brackett declined to proceed in the action because of unpleasant relations between himself and the receivers. I think this was an insufficient ground. The relation between client and attorney is, of course, confidential, and it may be that the assignment by the client of the cause of action to another party would justify a withdrawal from further procedure in the action by the attorney, though, personally, I do not believe that such is the law. In *Avery* v. *Jacobs* (15 N. Y. Supp. 564) it was held that the death of the client terminated the relation

with the attorney and that the latter was not obliged to continue further in the action. That, however, was an action against the estate for previous services and did not involve the right of the personal representatives of the deceased client to a substitution of attorneys and possession of the papers in the action. But all this has no application to the present case. The client of the attorney was a corporation. The receivers appointed were common-law receivers and the title to the property of the corporation was not changed. (*Keeney* v. *Home Ins. Co.*, 71 N. Y. 396.) The personal relations between the attorney and the receivers were unpleasant, but the receivers were appointed by the intervention of the law and not through the voluntary act of the client. Mere personal feeling if not accompanied with overt act can be no justification for the attorney's abandonment where the corporation is a client, for these very receivers might have been elected by the corporation as its officers. Surely, a change of the officers of a corporation would not entitle an attorney to withdraw from the prosecution of a suit and still retain his lien and right to remain as attorney of record. It may be said that, on the other hand, the respondent showed no very marked disposition to act fairly with the appellant. Therefore, while I feel constrained to vote for the affirmance of the order of the Appellate Division, the affirmance should be without costs.

The ground on which the attorney's relation to his client ceases upon the death of the latter is because death revokes all agencies. On the death of the client notices and papers in the suit can no longer be served upon the attorney by his adversary. Of course, that was not the case here. We have, within a few weeks, refused to dismiss the appeal of a corporation at the instance of the adverse party who claimed that, the corporation having gone into bankruptcy and the trustee in bankruptcy having refused to prosecute the appeal, the corporation had no longer the

right to maintain it.   We held that the bankruptcy of the corporation did not kill it.   A change in the identity of the client might justify the attorney in refusing to proceed with the suit.   But here under the authorities there has been no change in the client.   The court should not speculate on the chances of its property being restored to the corporation, or the reverse.   At least, in this case we have no facts to speculate upon.   As I have already said, there is no personal equation in the relation between the attorney and client where the client is a corporation. It is said that the attorney takes the chances of the stockholders electing different officers of the corporation who might be unfriendly to him, but not of the appointment of such persons to control the corporation by order of the court.   But why ?   Unfortunately, receiverships of a corporation are quite common occurrences, and how would intercourse with one of the respondents be less unpleasant had he been elected president of the defendant instead of being appointed its receiver ?   But to look beyond the case now before us, let us see the effect of the doctrine about to be declared.   Railroad companies are the most numerous and extensive litigants in our courts and receiverships are not their uncommon fate.   Under this decision upon the appointment of a receiver every attorney having one of the company's suits in charge may insist upon abandoning its prosecution and on being at once paid for his services or otherwise retaining all the client's papers, without the possession of which it would often be impossible and always difficult to successfully prosecute or defend the action.   Yet the receivership may be vacated a week later.

HAIGHT, VANN and COLLIN, JJ., concur with HISCOCK, J.; WILLARD BARTLETT and CHASE, JJ., concur with CULLEN, Ch. J.

Ordered accordingly.