**In re McCRORY STORES CORPORATION et al.***

**COOPER v. IRVING TRUST CO. et al.**

No. 456.

Circuit Court of Appeals, Second Circuit.

July 12, 1937.

Ernst, Gale, Bernays & Falk, of New York City (Murray C. Bernays and George G. Ernst, both of New York City, of counsel), for appellant.

Charles Rosenbaum, of New York City (Charles Rosenbaum and Maurice Gellar, both of New York City, of counsel), for appellees 57 Specific Creditors of McCrory Stores Corporation.

Stanchfield & Levy, of New York City (David S. Hecht, of New York City, of counsel), for appellee Hallgarten & Co.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal tests the power of the judge in charge of a proceeding for the reorganization of McCrory Stores Corporation under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) to revise the terms of a contingent fee retainer of the appellant Irving Ben Cooper and fix his fee at $35,000 on the ground that this sum was reasonable compensation for the services rendered. In our opinion he had such power under the terms of section 77B and his order thus fixing compensation should be affirmed.

McCrory Stores Corporation was adjudicated bankrupt on January 14, 1933, and its subsidiary corporations were so adjudicated on January 31, 1933. By order of February 2, 1933, these bankruptcy proceedings were consolidated and were thereafter conducted as a single proceeding.

*Writ of certiorari denied 58 S.Ct. 46, 82 L.Ed. —.

At a meeting of creditors held on January 28, 1933, a committee known as the Wiley Committee was appointed and the need of retaining counsel was discussed. The following day the committee selected Mr. Cooper, with the approval of a large number of the creditors, under an arrangement by which he was to receive $25,000 and a percentage of the claims represented by the Wiley Committee. The arrangement was embodied in a letter by the committee to Cooper dated February 8, 1933, whereby it agreed to pay him for services rendered and to be rendered to the committee the sum of $25,000 and in addition 10 per cent. of any dividends to be paid to the creditors whom it represented whether payable "in the bankruptcy proceeding or as a settlement pursuant to a compromise offered by the bankrupt and confirmed by the court or otherwise," the retainer and contingent fee to cover all services to be rendered by Cooper and other attorneys engaged by him. The $25,000 was fully paid at the time the foregoing written retainer was delivered. On July 5, 1934, petitions for reorganization of McCrory Stores Corporation and its subsidiaries were approved by the District Court, and in December, 1935, a plan of reorganization was approved which provided for payment to the unsecured creditors (a large number of whom the Wiley Committee represented) of the full amount of their claims, together with about 19 per cent. interest. Mr. Cooper and his legal associates rendered services on behalf of these creditors from the end of January, 1933, until the plan of reorganization was carried out in May, 1936. The aggregate amount which they would have received under the contingent retainer would have been upwards of $84,000, instead of the $35,000 which was allowed by the District Judge.

The creditors represented by the Wiley Committee executed and delivered to the committee powers of attorney appointing the committee and each of them attorneys in fact, and "authorizing them and each of them to attend any and all meetings of creditors * * * of the bankrupt in any court of bankruptcy or before any referee in bankruptcy, and for said claimant and in the name of said claimant to vote for or against any proposal or resolution that may be submitted in reference to the estate of the * * * bankrupt and in the choice of trustee or trustees and for said claimant to appoint such trustee or trustees. To accept or refuse any composition in or out of bankruptcy proposed by said bankrupt. To receive and collect any payments of dividends or fees or monies due said claimant under any compositions or otherwise and in general to take such action and do such acts, execute such consents and documents for such claimant as said attorney may deem best, as fully as such claimant could do if personally present."

It is impossible to suppose that a creditors' committee concerned with such a substantial insolvency or reorganization of a system of chain stores could properly act without legal counsel, and it is entirely unreasonable to suppose that the committee was expected to defray the expense of counsel personally. We inevitably conclude that the power of the committee to employ counsel on behalf of the creditors whom it represented was implicit in the broad powers given above. Inasmuch as the committee was authorized to employ counsel and, under the powers of attorney, was to collect the claims and had agreed to pay 10 per cent. out of any dividends, which it received, as Cooper's contingent fee, the latter acquired a contractual lien. Barnes v. Alexander, 232 U.S. 117, 34 S. Ct. 276, 58 L.Ed. 530; Ingersoll v. Coram, 211 U.S. 335, 365–368, 29 S.Ct. 92, 53 L. Ed. 208; Wylie v. Coxe, 15 How. 415, 419, 14 L.Ed. 753. Whether the section 77B judge had power to reduce the amount of this lien and fix Mr. Cooper's compensation at $35,000 is the question raised by this appeal.

Judge Patterson, who made the order, held that under subdivision (b) (10) of section 77B "the duty is laid on the court to see to it that the amount to be received by counsel is no more than commensurate to the services rendered." Had the reorganization been less successful, he might well have thought the full 10 per cent. could fairly be paid, but believing as he did that the agreement was not binding on the court if the compensation under it would result in more than a quantum meruit, he reduced it accordingly. Subdivision (b) (10), among other things, provides that: "For all purposes of this section any creditor may act in person, by an attorney at law, or by a duly authorized agent or committee: Provided, That the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements,

trust indentures, committee or other authorizations affecting any creditor acting under this section and may enforce an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claims filed by such committee member or agent, to the actual consideration paid therefor."

In subdivision (c) (9) it is further provided that the judge "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers, and committees or other representatives of creditors * * * and the attorneys or agents of any of the foregoing and of the debtor."

It is argued by counsel for the appellant that the "scrutiny clause" cannot affect relations between attorneys for creditors and their clients, or agreements between them for compensation. We confess that the reasoning seems to us unconvincing. The Wiley Committee employed Cooper and, while it did so on behalf of the creditors as principals, the implied power to employ counsel that was inherent in the powers of attorney running to the committee was an "authorization affecting" the creditors, the exercise of which, if found to be "unfair," might under the "scrutiny clause" (subdivision (b) (10), supra) be restrained or limited by the judge. That clause authorized him to restrain the committee from proceeding under the contingent fee agreement after the reorganization petition was filed and also authorized him to restrain any further performance. By the New York law, under which the contract of employment was entered into, a client may discharge his attorney at any stage of his employment, provided only the latter remains entitled to a quantum meruit for services already performed. This is true not only in general but even in cases where a retainer is contingent. A discharge of the attorney is not a breach of contract that subjects the client to damages. As was said in Martin v. Camp, 219 N.Y. 170, at page 174, 114 N.E. 46, 48, L.R.A.1917F, 402: "That the client may at any time for any reason or without any reason discharge his attorney is a firmly established rule which springs from the personal and confidential nature of the relation which such a contract of employment calls into existence. Matter of Dunn, 205 N.Y. 398, 98 N.E. 914, Ann. Cas.1913E, 536. If the client has the right to terminate the relationship of attorney and client at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract. If in such a case the client can be compelled to pay damages to his attorney for the breach of the contract, the contract under which a client employs an attorney would not differ from the ordinary contract of employment. In such a case the attorney may recover the reasonable value of the services which he has rendered, but he cannot recover for damages for the breach of contract."

In Application of Krooks, 257 N.Y. 329, 178 N.E. 548, the above rule was applied to a contract to pay a contingent fee for legal services to be rendered in connection with a condemnation proceeding. The attorney was discharged before the services were completed and was allowed a quantum meruit. The court said (257 N.Y. 329, at page 332, 178 N.E. 548, 550): "The contract has been canceled and its terms cannot establish the standard for compensation." See also, to the same effect, In re Tillman, 259 N.Y. 133, 181 N.E. 75.

We think the "scrutiny clause" of section 77B (b) (10) in substance does no more than to authorize the judge to do what Mr. Cooper's clients themselves might have done under the New York law. They might have discharged him at the eleventh hour and thus limited his compensation to a quantum meruit in no way measured by the terms of the contingent fee agreement. If he chose to go on and render services and apply for compensation in the section 77B proceeding in which subdivisions (c) (9) and (b) (10) regulated the compensation, he continued his work subject to the right and duty of the judge to allow out of the assets of the estate only "a reasonable compensation for the services rendered." Under such circumstances it is impossible to raise successful objections to the reduction of the amount of the attorney's lien on the ground that the reduction deprived him of property without due process of law. The contract rights of an attorney to a promised fee differ fundamentally from those of other contract creditors. As we have pointed out, they are subject to termination if the client wishes at any stage to dispense with his services.

Congress would certainly seem to have a similar right to authorize the court in bankruptcy proceedings to allow attorneys only reasonable compensation out of estate funds belonging to their clients and to subject arrangements for attorneys' fees to judicial scrutiny and supervision. We feel no doubt that the judicial power of review applies to compensation for services rendered both during the bankruptcy and the section 77B proceedings. We think that in the case at bar it cannot matter that the services were completed before the petition to have compensation awarded was filed. When Mr. Cooper continued to perform services in the reorganization proceeding he necessarily acted subject to the power of the judge to terminate his contract. He stands in no better position than otherwise merely because objection to his receiving the 10 per cent. provided for under the terms of his contract with the Wilcy Committee was made at the twelfth rather than the eleventh hour.

Order affirmed.