## CARLISLE v. BARNES.

(Supreme Court, Appellate Division, First Department. March 24, 1905.)

1. ATTORNEYS—RETAINER—CONTRACTS.

Defendant, as attorney in fact for certain claimants against the United States to recover duties on imports from Porto Rico, had conversations with plaintiff looking to his employment as defendant's attorney to recover such amounts. Thereafter plaintiff wrote defendant a letter embodying his understanding of the agreement, which ended with the words, "Of course, this is a mere outline of the matter and if you desire to go on with it, we will prepare and sign a formal contract." Shortly after receiving such letter, defendant had a conversation with plaintiff, in which he accepted the terms of the letter, and agreed to furnish plaintiff with the details necessary for him to take action, and waived the condi-

**918**     92 NEW YORK SUPPLEMENT    (Sup. Ct.

and 126 New York State Reporter

tion of the contract being reduced to writing. *Held* to create a contract between the parties on the terms of the letter, without a written instrument.

**2. SAME—BREACH—DAMAGES.**

Where defendant contracted to pay plaintiff 5 per cent. of the gross amount of claims recovered from the United States for duties on Porto Rican imports unlawfully exacted by the United States from defendant's clients, and to furnish plaintiff with the necessary data with which to prosecute such claims, but thereafter defendant refused to furnish plaintiff with such data, and employed another attorney to prosecute the claims, plaintiff was entitled to recover the 5 per cent. stipulated, without proof of services performed under the contract, or their reasonable value.

Appeal from Trial Term, New York County.

Action by John G. Carlisle against Reon Barnes. From a judgment in favor of plaintiff, and from orders denying a motion for a new trial and to relieve defendant from the judgment, he appeals. Affirmed.

See 92 N. Y. Supp. 924.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

H. M. Hitchings, for appellant.

A. G. Fox, for respondent.

PATTERSON, J. The plaintiff sued to recover damages for the breach of a contract of employment. He alleges in his complaint that he is an attorney and counselor at law, and a member of the bar of the Supreme Court of the United States, and of the Circuit and District Courts of the United States for the Southern District of New York, and of this court; that during the year 1900 there were various actions brought in the courts of the United States (in which actions he was associate counsel for the plaintiff) involving the constitutionality and legality of the imposition and collection of customs duties levied by the authorities of the United States upon articles of merchandise brought into the ports of the United States from Porto Rico at various times since the beginning of the late war with Spain, and to test the constitutionality and legality of the imposition and collection of customs duties upon articles of merchandise taken into Porto Rico "from other parts of the United States" during the same period. It is further alleged in the complaint that there were various merchants in the city of New York whose rights depended upon the determination by the United States Supreme Court of the questions arising out of the matters above referred to, and that the rights of certain named foreign commission merchants were involved, or would be controlled, by the decision of the Supreme Court of the United States of such questions. It is then alleged that the cases pending in the United States Supreme Court, and in which the plaintiff was associate counsel, were test cases, and that certain firms in the city of New York (not directly connected with the then pending litigations) appointed the defendant, Barnes, their attorney in fact to present, prosecute, recover, and collect their several claims against the United States arising out of

the imposition and collection by the collector of the port of New York of duties claimed to be due the government of the United States on merchandise consigned to them from the Island of Porto Rico at various times after the beginning of the said war with Spain; and it is further alleged that the defendant was authorized to employ attorneys and counsel for the purpose of enforcing their claims to reimbursement of duties paid, and that under the terms of the defendant's employment he (the defendant) was to receive from those for whom he acted as attorney in fact 20 per cent. of moneys allowed and paid by the United States upon claims of his constituents. It is further alleged that while the test cases were pending and the plaintiff was acting as counsel therein, and while the contracts between the defendant's constituents and himself were in full force and effect, and in or about the month of October, 1900, the defendant employed the plaintiff as his attorney and counsel to institute and prosecute in the United States and state courts, or before the executive departments of the United States government, such proceedings as might in the plaintiff's judgment be necessary to collect the claims of the defendant's constituents for and on account of the exaction of the customs duties referred to. It is further alleged that on the 20th of March, 1901, while the proceedings were still pending, it was agreed between the plaintiff and the defendant that the latter would pay to the former, for services rendered and to be rendered in connection with the said claims, as soon as he, the defendant, should be paid the amount to which he was entitled under the terms of his agreement with his constituents, a fee equal to 5 per cent. of the amount which might, as a result of the decision of the Supreme Court of the United States in the test cases, be allowed to such constituents; and that the defendant agreed to place all accounts and other evidence relating to the said claims in plaintiff's hands, and to furnish plaintiff immediately with the individual names of the members of the firms represented by the defendant, so that actions should be commenced for the recovery of said claims; and that at all times the plaintiff was ready and willing to carry out the terms of the contract between him and the defendant. An allegation is then made of the breach of the contract by the defendant, in that he failed and neglected to put the plaintiff in possession of any accounts or other evidence of said claims, or to furnish the individual names of the members of said firms to enable the plaintiff to institute any suit or suits, or proceedings at law or otherwise, in the courts or before the departments, and the defendant thereby wholly prevented the further performance of the aforesaid agreement by the plaintiff. It is then stated that on the 27th of May, 1901, the Supreme Court of the United States decided in the test cases that the collector of the port of New York had no authority of law to exact the payment of any moneys as duties upon articles brought into the port of New York from the Island of Porto Rico between the 11th of April, 1899, and the 1st day of May, 1900, and that moneys so exacted could be recovered, with interest from the date of payment, in an action at law against the collector; that thereupon the plaintiff again requested the defendant to perform his part of the agreement between

them, and to furnish the necessary facts for the institution of proceedings, at law or otherwise, for the prosecution and recovery of the claims represented by the defendant, and that the defendant refused to comply with the request. The allegation is then made that the firms represented by the defendant received from the government of the United States various large sums of money, and paid to the defendant as his percentage the sum of $89,600. The plaintiff claims that he is entitled to recover from the defendant 5 per cent. upon the amount paid by the United States government to the parties represented by such defendant.

The defendant in his answer denies knowledge of the pendency of the test cases, and also (substantially) the material allegations of the complaint. He admits that he did not put the plaintiff in possession of the accounts or other evidence of claims mentioned in the complaint, but he states that he did not at any time agree to furnish the plaintiff with accounts or evidence of such claims. He also admits that he did not furnish the plaintiff with facts for the institution of proceedings, at law or otherwise, for the prosecution and recovery of the claims of the persons represented by him; and he specifically denies that he at any time agreed to furnish the plaintiff with any facts for the institution of proceedings, at law or otherwise, for the prosecution and recovery of said claims. The answer also contains, as a second defense, a specific denial that the defendant employed the plaintiff in any manner to perform for him any professional or other services, or that the plaintiff has performed for him any service, professional or otherwise, or that the defendant is indebted to the plaintiff on account of the matters alleged in the complaint.

On the trial of the case, on the issue of employment, the only witnesses examined were the plaintiff and the defendant. The plaintiff testified, with relation to the incipiency of the employment, that he was approached by the defendant, who referred to the plaintiff's connection with the test cases, and stated (in effect) that he desired the aid and assistance of the plaintiff in the prosecution of the claims he, the defendant, represented. The defendant does not deny that conversations took place between the plaintiff and himself on the subject of employment, but his intimation is that an employment was sought or solicited by the plaintiff, and he claims that it was never made, although it had been spoken of. In other words, the position taken by the defendant is that, while there was general talk or conversation with respect to a possible employment, there was no actual retainer, and that whatever was in contemplation or negotiation was dropped and terminated without any definite understanding or agreement.

It is quite apparent from Mr. Carlisle's own testimony that no definite arrangement was made until February, 1901. General conversations looking to employment had been had upon the subject before that. In February (or March) of that year, according to the plaintiff's statement, it was the subject of consideration whether suit should be brought against the collector of customs in New York, or against the United States in the Court of Claims at Washington,

or against the United States in the United States Circuit Court in New York; and he testifies that it was the defendant who proposed to pay him 5 per cent. (or a sum equal to 5 per cent.) upon the whole amount realized, as compensation for collecting the claims. Mr. Carlisle also testifies that he suggested to the defendant that he should be paid, in addition to the 5 per cent., whatever necessary expenses he might incur in connection with such collection, e. g., disbursements for traveling and printing. He also testifies that Barnes did not reject that last-mentioned feature of the proposition; that Barnes did not affirmatively assent to it in terms; but that noncommittal position of the defendant related only to the incidental expenses, and in no way to the 5 per cent. compensation.

It appears from Mr. Carlisle's testimony that the defendant himself made the proposition for 5 per cent. compensation, and, that being so, it is said that the contract of employment was then made: but the evidence does not fully bear out that contention. The plaintiff testified that, after the conversation relating to the terms of employment, he said to the defendant that he would go back to his office and put in the form of letter "the proposition which will hold us both." And that letter becomes very important, because the defendant insists that it furnishes convincing evidence that a contract did not then exist between him and the plaintiff, and that the plaintiff so understood, and admitted that there was to be no contract until the terms and conditions thereof were reduced to writing. The plaintiff, on the 19th of February, 1901, wrote to the defendant as follows:

"In accordance with our understanding the other day, I write to say that I will undertake the collection of the claims in your hands on the following conditions: You are to place in my hands all the claims controlled by you for taxes or duties paid at New York for goods bought at Porto Rico, to include all claims for such duties that may be paid hereafter, up to the time of the final decision on the questions involved. I will institute and prosecute such proceedings in the courts, or elsewhere, as may be necessary to secure their collection; and when collected in whole or in part, I am to receive as compensation for my services a sum equal to five per cent upon the whole amount actually collected; and no compensation in case nothing is collected and you are to defray all necessary expenses incurred in the prosecution and collection of the claims, which will consist in the charges for printing and travelling expenses and such incidental expenses as may be connected with the business. Of course, this is a mere outline of the matter and if you desire to go on with it, we will prepare and sign a formal contract."

There can be no doubt of the meaning of this letter. At its date, there was no agreement between the parties. The whole matter was in fieri. It is intimated in the letter that the writer intended to reduce the terms of the agreement to writing. The words, "if you desire to go on with it," indicate that it was then still open to the defendant to make a contract or not, as he pleased. He had his locus pœnitentiæ, and, if the case rested there, there could be no question that there was no binding obligation assumed by the defendant. But it is in evidence that, shortly after the defendant received that letter, he and the plaintiff had a conversation, in which the defendant accepted the terms of the letter, and agreed to furnish to the plaintiff the details necessary for him to take action, either in

the courts or in the Treasury Department, for the collection of the claims in his hands. It is very clear, upon Mr. Carlisle's testimony, that the defendant assented in that conversation to the employment, and waived the condition of the contract being reduced to writing. The decision of the Supreme Court of the United States in the test cases had not been rendered at the time of that conversation. The defendant denied in his testimony that he had the conversation which was in effect an acquiescence in the terms of Mr. Carlisle's letter of February 19th, but that was a matter for the consideration and determination of the jury, and they found in favor of the plaintiff on that disputed question. The conversation having taken place, and the defendant having not only acquiesced in the terms of the letter, but having, according to the testimony of Mr. Carlisle, promised to furnish him with the data he required for the purpose of ascertaining the names of the claimants and the amounts which they claimed, it is obvious that the defendant waived the mere formality of the execution of a written instrument as expressive of their agreement. If the plaintiff's version of the conversation be true (and the jury have found it is), then it is apparent that there was a waiver of a written agreement. An agreement to contract is, of course, not a final contract, because something is left open; but where all the terms are settled, and what each party is to do is fully understood and agreed upon, although a written instrument may have been in contemplation, the execution of such an instrument is not absolutely required to make a binding contract, if the condition of a writing is waived. The case of Sanders v. Pottlitzer, 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757, is interesting and instructive on that subject. There, terms were agreed upon by parol, but a written instrument was intended. One of the contracting parties insisted that other terms should be embodied in the writing. The court upheld the verbal agreement, notwithstanding the provision concerning its reduction to writing, because of the acts of the party who desired to vary the terms of the parol agreement and substitute others in the contemplated writing. Here, it is plain, upon an issue directly raised and upon which the jury passed, that the defendant waived the execution and delivery of a written instrument, and that he bound himself to the contract of employment as claimed by the plaintiff.

The defendant never furnished to the plaintiff the data required to enable the latter to present the claims either in the courts or to the Treasury Department. There is no dispute as to that; but it does appear that the defendant, repudiating his contract with the plaintiff, employed another lawyer to prosecute and collect the claims represented by him. That other lawyer had been the Attorney General of the United States, who argued the test cases in the Supreme Court of the United States against Mr. Carlisle. Through his instrumentality and agency the claims were collected. They were paid by the Treasury Department.

The breach of the contract is clear. The refusal to give the plaintiff the data required, so that he might perform his service, is admitted. He could not proceed without them. There is some sug-

gestion of inequity in the plaintiff's claim, because it is said he did nothing. This action is not on a quantum meruit. The plaintiff was not required to prove what work he actually performed. There was a special contract and a breach, and the action is for a specific amount of damage for an agreed sum resulting from that breach. As this action is constituted, proof was not required such as would be necessary in an action on a quantum meruit. Had it been such an action, it might have been necessary for the plaintiff to prove what he did; but here, there was an executory contract and a palpable breach, and the plaintiff is entitled to recover the fixed value of his contract, which was the 5 per cent. agreed upon. It is quite conceivable that under the employment he did many things which would have advanced, promoted, and secured a favorable result had he been permitted to proceed. The service performed by the gentleman who was subsequently employed was precisely (in kind) the same as might have been performed by the plaintiff, and the result shows that the benefit to the defendant and his constituents would have been exactly the same, whether such services were rendered by the plaintiff, or by the gentleman by whom he was superseded. The decision of the Supreme Court of the United States upon the question involved was not rendered until May, 1901, and it is evident that the considerations which induced the government of the United States to return the sums to the defendant's constituents would have been influential, irrespective of the personality of the lawyer in charge of the collection of the claims. If the defendant chose to displace the plaintiff and employ some one else, thereby committing a breach of the contract, he was bound to pay the latter the sum he had agreed to pay, because that was the value of the contract to the plaintiff. Bartlett v. O. F. Savings Bank, 79 Cal. 221, 21 Pac. 743, 12 Am. St. Rep. 139.

After the decision of the Supreme Court of the United States fixing the rights of the defendant's constituents (for, in principle, they were identical with those of the claimants in the test cases), it was established that the claims put for enforcement in Mr. Carlisle's hands could be collected. The value of the contract would have been secured to the plaintiff but for the defendant's default, and that value is fixed by the agreement. The plaintiff is entitled to recover his 5 per cent., whether that amount is to be called strictly "compensation," or the "value of the contract" or "profit." Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676. The charge of the learned judge below is substantially correct upon that subject. Here was a complete breach of a contract; the action was for the sum agreed to be paid, and not for the value of services rendered; the plaintiff was prevented by the defendant from earning the amount agreed upon, and was ready and willing at all times to render the services for which he was employed.

There is raised on the record on this appeal from the judgment a question which has been argued upon an independent appeal, and which will be considered separately.

Our conclusion upon the whole case is that the judgment and order denying motion for a new trial should be affirmed, with costs. All concur.