## MARTIN v. CAMP et al.

(Supreme Court, Appellate Division, Second Department.  April 3, 1914.)

1. ATTORNEY AND CLIENT (§ 76*)—RELATION—DISSOLUTION.

The relation of attorney and client may be dissolved by either party for cause, and the client may dissolve it without cause.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 120–131;  Dec. Dig. § 76.*]

2. ATTORNEY AND CLIENT (§ 63*)—RELATION—CONTINGENT FEE.

A contract for attorney's services to secure awards for certain land and to reduce assessments thereof for 10 per cent. of the awards and one-quarter of the amount of the reduction in the assessments, with a further provision that nothing should be paid in case no award should be obtained or assessment reduced, created the same relation that would arise from a general retainer.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 85, 87;  Dec. Dig. § 63.*]

3. ATTORNEY AND CLIENT (§ 134*)—CONTRACT FOR SERVICES—DISCHARGE OF ATTORNEY—QUANTUM MERUIT.

Where defendant's testator employed an attorney to perform certain legal services for a contingent fee, and after the attorney had performed part of the services he was discharged, his right of action was on the contract and not on a quantum meruit.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 301–304;  Dec. Dig. § 134.*]

4. ATTORNEY AND CLIENT (§ 134*)—CONTRACT FOR SERVICES—DISCHARGE OF ATTORNEY—RECOVERY—AMOUNT.

Where testator employed an attorney to secure awards for certain lands and to reduce assessments thereof with promised compensation of 10 per cent. of the awards and one-quarter of the amount of the reduction in assessments, and it was further provided that nothing should be paid in case no award was obtained or assessment reduced, the attorney having been discharged before the service was completed, he was entitled to wait until the awards had been made and the assessments reduced by his successor and then recover contract compensation.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 301–304;  Dec. Dig. § 134.*]

5. LIMITATION OF ACTIONS (§ 46*)—ACCRUAL—ACTION FOR ATTORNEY'S SERVICES.

Where an attorney contracted to render services for a contingent fee, and before the services were finished he was displaced and the proceeding continued by his successor, limitations did not begin to run against the attorney's right to recover compensation until the recovery had been had by the client, so that the amount the attorney was entitled to recover under his contract could be ascertained.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253;  Dec. Dig. § 46.*]

Stapleton and Putnam, JJ., dissenting.

Appeal from Trial Term, Westchester County.

Action by James G. Martin against Hugh N. Camp, Jr., as executor, etc., of the will of Frederic E. Camp, deceased, impleaded with others.  From part of a judgment in favor of plaintiff, the defendant Camp appeals.  Affirmed.

Argued before JENKS, P. J., and THOMAS, RICH, STAPLETON, and PUTNAM, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Geo. Ed. Joseph, of New York City (John F. Valieant, of New York City, on the brief), for appellant.

Barclay E. V. McCarty, of New York City, for respondent.

THOMAS, J. Frederic E. Camp, who was the executor of the estate of Hugh N. Camp, made a written contract with McCarty & Baldwin, lawyers, whereby they were employed to secure awards for certain lands and to reduce assessments thereon, with the promised compensation of 10 per centum of awards and one-quarter of the amount of reduction in assessments, with a further provision that they should be paid nothing "in case no award shall be obtained or assessment reduced." The lawyers conveyed their interest in the contract to the plaintiff, and the defendant is the executor of the will of Frederic E. Camp. After the lawyers had made material progress, they were without cause dismissed, and others retained, and in the end there was an award for land and a reduction of assessment. The plaintiff has recovered the full compensation reserved by the contract and by virtue of it.

The essential question is whether an action on the contract may be maintained. The appellant insists that, although the contract was lawful and bound the lawyers, it bound the client only to such time as he saw fit to discharge them, to whom he would, in that case, owe a sum equal to the value of services rendered. In that view the contract continues at the will of the client, and may be terminated by the latter at any instant preceding the completion of the entire work, and thereupon the lawyer must, gathering such data as he may, carry the burden of proving the value of his services. What, if any, is the primary reason that peculiarly excludes members of one profession from the usual rule that a legally existing contract binds the parties to it? The contract is lawful. If it be executed, it is respected. It binds the attorney in duration of service to the full quantity of required achievement, and limits him to the stipulated compensation, whatever the magnitude of the labor.

[1] But undoubtedly, for good cause, either party may dissolve the relation, and the client may do it without cause. But what rational conclusion depends upon the admitted premise?

[2] The contract creates the same relation that arises from a general retainer. It is immaterial that a formal contract more precisely sets bounds to the service. In either case the law permits the client to revoke the duty imposed on the lawyer and confide it to another. The lawyer, properly mindful of the spirit of his profession, may not accuse the client even of erring judgment, and, if there be no stipulation to the contrary, must accept such compensation as he has earned, for he knew that his client's whim might dissociate him in whole or in part from the matter in hand. The vicissitudes and shifting phases of litigations require lawyers of varied capacities and aptitudes, and it may be well that the client should have discretion in making use of men and opportunities. And so the law permits the client to retain and to dismiss his lawyer without reason given, and to pay him for services rendered. That is a full protection

to the client, and needs and merits nothing more. But may not the client waive his right to pay as for the value of the service?

[3] Shall he, as well as the lawyer, be prevented from fixing the compensation? The law gives the client the right to retain a lawyer and to pay him upon a quantum meruit. But, from prudence or necessity not pursuing that course, he makes a contract to pay a gross sum for the lawyer's services, for instance $100 for trying a case or 10 per cent. on the amount of a favorable verdict. By what assumption of overlying privilege may the client assert that, although he did not stipulate for payment for services upon quantum meruit and did agree to pay an exact amount therefor, he may repudiate what he agreed to pay and adopt a method of payment that is the opposite of and wholly inconsistent with that for which he contracted? For agreement to pay an exact sum cannot coexist with an agreement expressed or implied to pay upon quantum meruit. So the dismissal is not a breach of the contract, and action upon quantum meruit does not lie. The lawyer recovers pursuant to his contract or not at all. There is a consideration for the client's agreement to pay the fixed sum.

[4] The attorney foregoes his right to sue on quantum meruit, and agrees rather to accept a sum in liquidation, and in the case at bar he agreed that he should receive payment only from the money obtained. And how, theoretically, could he sue on quantum meruit? The client could answer that he agreed to pay him a percentage of the recovery. What answer could the lawyer make to that? That the client had broken the contract? No. For the client has not broken the contract, but has, according to his right, dissolved the relation. The contract is that the client may hold the lawyer to the entire service or may dismiss him at will, but that the compensation shall depend upon recovery. But it may be urged that, if the plaintiff may use the contract for recovery, the value of the client's right to change his lawyer is lost or valueless. That is an erroneous conception. He may substitute another lawyer. His right to do so is not abrogated. But he must pay the first lawyer in the way he agreed to pay him, and not in the way he agreed not to pay him. He has by contract put the lawyer in the predicament that he may recover only in case his client recovers, whether he keeps him or discharges him, as he may rightfully do without any breach of the contract. For it is not in derogation of a contract to substitute another lawyer. But it is an impairment of it to refuse the superseded lawyer the payment the contract provides. The client's error is that he would exercise his right at the expense of the lawyer's right to be paid as the contract requires. The lawyer must abide the contract, not only as to services, but also as to compensation for them. The client may of right preclude rendition of the service, but he should not be permitted to preclude payment as the contract exacts of him and the lawyer. This conclusion is in accord with Carlisle v. Barnes, No. 1, 102 App. Div. 573, 580, 581, 92 N. Y. Supp. 917. Upon an application for leave to appeal to the Court of Appeals, the Chief Judge of that court denied the same. Carlisle v. Barnes, 183 N. Y. 272, 76 N. E. 27. Why

deny it if the decision was erroneous? The case, decided in 1905, was considered approvingly in discussion in Matter of Albers Realty Co., 140 App. Div. 277, 279–281, 125 N. Y. Supp. 179. It was followed by Mr. Justice Bischoff in Keller v. Faber, N. Y. Law Journal, Oct. 30, 1908, p. 464. The principle was enunciated in Marsh v. Holbrook, 3 Abb. Dec. 176, where the agreement was that the attorney should have, as compensation for his services, a gross sum if he succeeded in the case. The client settled for a sum less than that involved, and it was decided that the agreement was valid, and a recovery upon the basis of the contract was sustained, although the amount was abated in accord with the sum received by the client. It was said that the client was not debarred by the agreement from settling the case; that thereby the litigation was terminated; but that did not put an end to the contract. The client took the matter from the lawyer, thereby preventing the lawyer from going forward and essaying the recovery of the whole sum. Two members of the court considered that the plaintiff was entitled to recover the whole contract price, and such seems to be the thought in the opinion of James, J., although Woodruff, J., stated that it was not necessary to decide it as the plaintiff had not appealed. But the action was sustained as distinctly one to recover the value of the contract and not on quantum meruit.

In Barney v. Fuller, 133 N. Y. 605–608, 30 N. E. 1007, 1008, it is said with reference to the admissibility of evidence of the value of legal services:

"The defendants seem to rely for the exclusion of such evidence mainly upon the case of Marsh v. Holbrook, 3 Abb. Dec. 176, where the plaintiff claimed a special agreement whereby the defendants agreed to pay him for legal services the sum of $5,000, 'if he got the case.' Upon the trial, the defendants did not dispute the special agreement, and in fact admitted it. Under such circumstances, the court did not err in excluding evidence as to the value of the services."

Reference is made to Matter of Dunn, 205 N. Y. 398, 98 N. E. 914, Ann. Cas. 1913E, 536, where the question was whether an attorney, declining to continue his service to receivers of his client, could, in deprivation of compensation and lien, be required to deliver papers to substituted attorneys. In the course of the argument the right of a client to discharge his attorney was stated with a reference to Tenney v. Berger, 93 N. Y. 524, 45 Am. Rep. 263, wherein issue was the right of an attorney to recover for services in a proceeding from which he had withdrawn upon the introduction of counsel objectionable to him. The client sought to continue him. The essential question was whether the lawyer was in the wrong. It was said, and said necessarily, that the contract was entire as to him, and it was stated unnecessarily that the contract was not entire as to the client. The contract was not for a stipulated sum, and the action was to recover for services rendered. So, when Judge Earl said that a "client may discharge his attorney, arbitrarily, without any cause, at any time, and be liable to pay him only for the services which he has rendered up to the time of his discharge," the statement was not relevant to the question under consideration, nor was it subject of

comment in Matter of Dunn. While any observation of Judge Earl is entitled to careful consideration, its materiality to the matter under discussion must determine its authority. There was citation to decisions. Ogden v. Devlin, 45 N. Y. Super. Ct. 631; Trust v. Repoor, 15 How. Prac. 570; Gustine v. Stoddard, 23 Hun, 99. Those decisions sustain the power to dismiss an attorney, but do not, so far as appears, relate to the question under discussion.

In Johnson v. Ravitch, 113 App. Div. 810, 100 N. Y. Supp. 1123, this court passed upon the amount for which an attorney should have a lien, where he was superseded by another attorney. The first attorney had an agreement that his compensation should be 50 per cent. of the recovery, but the "fixing of such compensation was voluntarily submitted to the court by both sides." It appears that upon the appeal the attorney asked that his lien and contract "be in no wise impaired by this order, but remain in full force and effect." That was inconsistent with the invitation to the court to fix the compensation. The compensation could not be fixed and at the same time be left dependent on recovery. But Justice Gaynor did write in effect that the client could dismiss him, and that in such case the compensation would be for services actually rendered, and that the contract was subject to that rule. But the statement, even if necessary to the decision, is not in accord with current judicial thought.

In Andrewes v. Haas, 160 App. Div. 421, 144 N. Y. Supp. 1060, recently decided by this court, there was no recovery by the client whereby the attorney's compensation could be computed.

[5] It is objected that the statute of limitations precludes maintenance of the action. If the action may be based on the contract, the terms of it must be observed. Obviously plaintiff could not prove a percentage of the recovery until the amount of it should be known: And, since such knowledge came, the statute has not run.

The judgment, in so far as appealed from, should be affirmed, with costs. All concur, except STAPLETON and PUTNAM, JJ., who dissent.

STAPLETON, J. I dissent, upon the authority of Johnson v. Ravitch, 113 App. Div. 810, 100 N. Y. Supp. 1123. In that case the attorney had an express contract for a fixed percentage of any sum recovered by settlement or judgment. The court there affirmed an order fixing the compensation upon the basis of the reasonable value of services actually rendered up to the time the order was made, upon the client's motion for the substitution of another attorney. This court then said:

"Every attorney enters into the service of his client subject to the rule that his client may dismiss or supersede him at will; and, if he makes a contract for future services to his client, it is necessarily subject to such rule, and made with full knowledge that he may never perform such service, for the reason that his client may not keep him, and that in that event he will not be paid therefor, but will be entitled to compensation only for the services he has actually rendered."

The prevailing opinion questions the necessity of the observation quoted, proclaims it to be discordant with current judicial thought, and

asserts that both the parties voluntarily submitted the controversy to the court. My view is that the observation was essential to the decision, because, if the ordinary rule of damage relating to breach of contract prevailed, the court had no power to limit the damage to the reasonable value of the services actually rendered. This it did, and in doing so it decided the only question presented. The last expression of the judicial thought of the highest court is:

"That the relationship of attorney and client, which has been given a peculiar and confidential character, is subject to principles and rules which do not apply to an ordinary contract." Matter of Dunn, 205 N. Y. 398, 405, 98 N. E. 914, Ann. Cas. 1913E, 536.

See, also, Andrewes v. Haas, 160 App. Div. 421, 144 N. Y. Supp. 1060.

I think the rules and principles which are peculiar were stated in Johnson v. Ravitch, supra. Why, in a contract between attorney and client, is the right of the client to break the contract emphasized if the consequences are the same as attend the breach of an ordinary contract? Does the making of an express contract for compensation, fixed or contingent, destroy the reason for the rule which the courts have formulated with a peculiar relationship for its foundation? The attorney in Johnson v. Ravitch did not submit his rights voluntarily. He was haled to court by his client, seeking a substitution, and asking for a fixation of his compensation, which the attorney had the right to believe would be fixed according to legal principles which would be applied alike either in an action or a special proceeding. Unless we were in error in the case discussed, it is a precise authority for the defendant here.

In Carlisle v. Barnes, No. 1, 102 App. Div. 573, 92 N. Y. Supp. 917, while the chief question litigated was the existence of a contract, it must be conceded that the question of the proper measure of damage on a breach was decided according to principles applicable to the breach of an ordinary contract. We decided Johnson v. Ravitch the other way, presumably with that authority before us. All that it was necessary to decide in Matter of Albers Realty Co., 140 App. Div. 277, 125 N. Y. Supp. 179, was that an attorney's lien did not attach to a client's claim until the commencement of a proceeding to enforce or adjudicate it.

In Marsh v. Holbrook, 3 Abb. Dec. 176, all that was decided was that when an attorney did all the work he engaged to do, and his client accepted a satisfactory sum in settlement of his claim, the attorney could recover that proportion of the agreed compensation which the amount accepted in settlement bore to the amount claimed.

PUTNAM, J., concurs.