## DOLPH *v.* SPECKART.

(179 Pac. 657; 186 Pac. 32).

**Appeal and Error—Notice of Appeal—Description of Judgment—Date—Misleading Respondent.**

1.   Where a notice shows that defendant appeals from a judgment rendered June 28th, and the transcript discloses a judgment entered July 1st, the misdescription was not such as to mislead plaintiff, and defendant could assume that the judgment was rendered on the date of the verdict, as provided by Section 201, L. O. L., and plaintiff was not prejudiced thereby, where he appeared several times to object to the sufficiency of the sureties upon the undertaking.

**Appeal and Error—Notice of Appeal—Description of Judgment—Inaccuracy in Amount—Further Appearances of Appellee.**

2.   Where a notice of appeal states that the judgment was for $128, when it was for $128.50, the inaccuracy could not have misled respondent, particularly where his appearances thereafter in the Circuit Court indicated that he was not uncertain as to the judgment appealed from.

**Appeal and Error—Notice of Appeal—Negligence.**

3.   Although a notice of appeal describes the judgment as of an erroneous date, where the affidavit of appellant's counsel shows that the date given in the notice was the same as that in the copy of the

proposed judgment served upon him by respondent's counsel, he is thereby relieved from any imputation of carelessness in preparation of notice.

### Appeal and Error—Appeal Statutes—Liberal Construction.

4. Substantial compliance with the appeal statutes is all that ought to be required to the end that no one shall be deprived of his right to be heard by reason of any mere technicality arising from strained construction.

### ON THE MERITS.

### Evidence—Value may be Proved by Showing Amount Realized at Sales.

5. When it becomes necessary to ascertain the value of articles for which there is no open market, evidence of price realized at sales of such articles, held under conditions calculated to secure adequate returns, is admissible, provided that the time of sale is not too remote to raise a logical inference.

### Evidence—Inadmissible When in Conflict With Written Stipulation.

6. In an action by an attorney to recover compensation by reason of a breach of a percentage contract, defendant having employed other counsel, who brought action, and stipulations were entered into between the client and opponent, wherein it was agreed that the client was entitled to at least $50,000, evidence that the client's opponent contended that the client was not entitled to the amount stipulated was properly excluded, being in direct conflict with the written stipulation.

### Stipulations—Construction of Stipulation That Payment to Plaintiff Should be Without Prejudice to Rights.

7. A clause, "said payment to be without prejudice to the rights of any of the parties to this suit," in a stipulation in an action to recover part of the estate of a deceased person wherein it was agreed that plaintiff was entitled to at least $50,000, which was given her, *held* to refer to litigation as to the balance of the fund, and not to the amount paid plaintiff.

### Attorney and Client—Amount of Damages for Breach of Contract of Employment Question for Jury.

8. In an action by an attorney for breach of a contract of employment under which his compensation was to be a certain percentage of the amount recovered, defendant having employed other counsel, who brought an action, wherein it was stipulated that defendant was at least entitled to certain stock which was deposited in the registry of the court, whether defendant accepted such stock as her property so as to entitle plaintiff to compensation *held* for the jury, although the stock remained in the registry of the court.

### Attorney and Client—Breach of Contract by Client—Amount of Compensation.

9. Where a client breached a contract under which he employed an attorney to obtain or recover part of the estate of a decedent claimed by the client, and employed other counsel, who brought an action wherein it was stipulated that the client was at least entitled

to certain corporate stock, which was then given to the client, damages for breach of the contract with the attorney should be based on the value of the corporate stock at the time it was issued or given to the client.

#### Contracts—Construction to Give Effect to Entire Contract.

10. Written contracts should be construed from the standpoint of the parties when they were contracting, and be so interpreted as to give effect to all the provisions, if possible.

#### Attorney and Client—Measure of Damages for Breach of Contract of Employment.

11. Where one employs an attorney and makes an express valid contract, stipulating for the compensation which the attorney is to receive for his services, such contract is, generally speaking, conclusive as to the amount of such compensation.

#### Attorney and Client—Right of Client to Terminate Relationship cannot Defeat Claim for Compensation.

12. While a client may terminate the relationship between himself and his attorney, where an attorney is prematurely discharged or is otherwise wrongfully prevented from performing the professional duties for which he was employed without fault on his part, he is entitled to compensation, even though the arrangement was for a contingent fee, provided the contingency has happened.

#### Attorney and Client—Measure of Damages for Breach of Contract of Employment.

13. A client, by wrongfully preventing the performance of acts which entitle an attorney to specific compensation under a contract, becomes liable in damages in such amount.

#### Trial—Construction of Stipulations and Orders in Other Suit Question for Court.

14. In an action by an attorney for damages for breach of a contract of employment under which he was to receive as compensation a certain percentage of the amount recovered, the client, having employed other counsel, who brought action in the federal court, wherein certain stipulations were entered into concerning the amount due the client, the construction of orders entered in the federal court and stipulations therein was for the court.

#### Appeal and Error—Findings Supported by Evidence not Disturbed.

15. Under the Constitution, where there is any competent evidence to support a verdict, the Supreme Court is precluded from disturbing the same.

From Multnomah: Robert Tucker, Judge.

In Banc.

On motion to dismiss appeal.          Overruled.

*Mr. Henry J. Bigger,* for the motion.

*Mr. E. E. Heckbert, contra.*

McBRIDE, C. J.—This is a motion to dismiss an appeal, on the ground that the notice of appeal does not describe with sufficient certainty the judgment appealed from.

The notice of appeal is in the usual form and states that the defendant appeals from a judgment against her rendered on June 28, 1916, for the sum of $128; the further sum of $2,509.14, and the sum of —— dollars costs. The transcript discloses a judgment for the sum of $128.50, the further sum of $2,509.14, and $57.05 costs, entered on July 1, 1916, and dated June 29, 1916. The notice of appeal was served August 27, 1918, and an undertaking on appeal was served and filed September 6, 1918, which undertaking followed the notice in the description of the judgment. On September 10, 1918, the plaintiff filed exceptions to the undertaking, and on September 20th, the exceptions were heard and defendant was required to give a new undertaking, which undertaking was actually filed on September 20, 1918, which also followed the notice of appeal. This undertaking was excepted to, and thereupon on September 25, 1918, defendant filed an undertaking on appeal and for a *supersedeas,* which was conditioned to satisfy the judgment that should be rendered on appeal. The description of the judgment in this undertaking followed the previous undertaking and recited that the judgment was rendered on June 28, 1918. No exception being filed, the undertaking was approved.

1. We do not think the misdescription of the judgment was such as to have misled the plaintiff. The

verdict was rendered on June 28th, and the judgment should have been rendered on that day: Section 201, L. O. L.

The defendant, in taking her appeal, naturally assumed, and had a right to assume, that plaintiff had complied with the law, and should not be prejudiced by the fact that plaintiff had waited until a later date to enter the judgment, if in fact it was entered and in force at the date of taking the appeal. As before recited, the plaintiff appeared several times in the Circuit Court to object to the sufficiency of the sureties upon the undertaking, thereby recognizing the fact that he was informed of and knew the judgment defendant was attempting to appeal from, and, indeed, considering the fact that the judgment was upon two causes of action, and for separate amounts in each, and that the verdict was rendered upon the twenty-eighth day of June, and the judgment due for entry on that day, he could not as a matter of law have been misled.

2. As to the misdescription of the amount of the judgment, it may be repeated that the verdict was upon two causes of action. Upon the first, the jury awarded plaintiff $128.50; upon the second $2,509.14. In the notice of appeal the amounts are stated at $128 and $2,509.14. It is needless to say that the notice is technically inaccurate in respect to the judgment rendered upon the first cause of action, but we are of the opinion that the inaccuracy is not of such a character as to have misled anyone, and the record of plaintiff's various appearances in the Circuit Court thereafter indicates that he was not uncertain as to what judgment defendant was appealing from.

3. In justice to the attorney for the defendant it is not improper to state that it appears from his affi-

davit, which is not contradicted, that before the entry of. the judgment, as it now appears of record, the attorney for the plaintiff served upon him a copy of the judgment which plaintiff proposed to ask the court to enter, and that in this copy the proposed judgment is described and dated exactly as recited in the notice of appeal. While we do not pass upon the efficacy of such an affidavit, as tending to explain a defective notice, it at least relieves counsel for defendant from any imputation of carelessness in preparing his notice.

4. This court has always been liberal in its construction of our appeal statutes, to the end that no one shall be deprived of his right to be heard here, by reason of any mere technicality arising from a strained construction of the statutes, substantial compliance with which is all that ought to be required. The motion to dismiss is overruled.

Counsel for defendant has interposed a countermotion for leave to file an amended undertaking, complying with the description of the judgment as actually entered, and this motion is allowed.

MOTION TO DISMISS OVERRULED.

MOTION TO AMEND UNDERTAKING ALLOWED.

---

Affirmed January 6, 1920.

ON THE MERITS.

(186 Pac. 32.)

Department 2.

Chester V. Dolph, an attorney at law, brings this action against Harriet F. Speckart to recover for personal services, pursuant to a written contract. A verdict was rendered in favor of plaintiff and from a judgment thereon defendant appeals.

Several years before entering into this contract defendant had been left a considerable amount of property by her deceased father, Adolph Speckart, who died in Butte, Montana, in 1903, leaving a will by which he devised and bequeathed one third of his property to his widow, one third to defendant and the remaining one third to his son. The shares of the defendant and the son, who were then minors, were to be paid to them when they became twenty-one years of age. They had arrived at that age prior to making this contract. The estate had never been settled nor the defendant's share paid to her. The defendant's mother was appointed executrix of the will of Adolph Speckart and completely administered the estate in Butte, Montana, several years prior to the execution of this contract. Some time before January, 1907, the defendant had demanded from her mother and her uncle, Leopold F. Schmidt, who was the adviser of her mother, her share of the estate. This demand was not complied with, but the uncle, Leopold F. Schmidt, was appointed administrator of the estate of Adolph Speckart, in Olympia, Washington. While these proceedings were pending plaintiff and defendant, on November 28, 1906, entered into a contract for the employment of the plaintiff as defendant's attorney. Under this contract the plaintiff performed services of the value of $128.50, as claimed in the first cause of action. This is admitted by defendant and there is no issue concerning the same.

On January 12, 1907, plaintiff and defendant entered into another written contract reciting that: The plaintiff desired her attorney to obtain an amicable settlement of defendant's inheritance from the estate of her deceased father, and oppose a distribution of

the estate until such amicable settlement could be obtained, and then providing in part, as follows:

"Now therefore in consideration of the services to be rendered the party of the second part by the party of the first part, in the matter of said administration in said Thurston County, the party of the second part does hereby agree and promise to pay to the party of the first part of all moneys and property which may come to her out of said estate unconditionally and directly, either through said amicable settlement or otherwise, or through said estate in administration in said Superior Court for Thurston County, the following amounts, to wit:

"If there shall be so received by the party of the second part not more than $65,000, the party of the first part shall receive one and one-half per cent; if there be received more than $65,000, and not more than $85,000, the party of the first part shall receive two per cent; if there shall be received more than $85,000, the party of the first part shall receive two and one-half per cent."

At the same time Harriet F. Speckart signed a letter of instructions in detail, directing the attorney to go to Olympia and protect her interests and obtain an offer of an amicable settlement, if possible, and also secure information as to the value of her interest in the estate. Thereupon, plaintiff went to Olympia and returned with a proposition of compromise which was refused. On January 22, 1907, defendant notified the plaintiff to perform no further services for her and attempted to cancel the contract. The plaintiff refused to consider the contract canceled and notified the defendant that he was ready to perform his part of the same. The defendant employed other attorneys, and in September of that year instituted a suit against her mother and uncle in the United States Circuit Court for the Western Division of the West-

ern District of Washington. In September, 1909, plaintiff brought this action, claiming a commission of two and one-half per cent on $119,500, which he alleged "that defendant has now received, since said agreement of January 12, 1907, unconditionally and directly, money and property which has come to her out of the estate of her deceased father." The jury allowed the plaintiff the sum of $2,509.14, or two and one-half per cent of the sum of $100,365.60.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. E. E. Heckbert.*

For respondent there was a brief and an oral argument by *Mr. Henry J. Bigger.*

BEAN, J.—It is the contention of the defendant that she never received any money or property from her father's estate, within the meaning of the contract with the plaintiff; that the accounting in the federal court has not been completed and that plaintiff under the terms of the contract is not entitled to any compensation at this time. This question is properly raised by a motion for a nonsuit. While this suit was pending in the federal court, defendant's mother, on July 20, 1909, deposited in the registry of that court the sum of $67,535.74, pursuant to a stipulation made between the respective counsel of Miss Speckart and her mother, which is in part as follows:

"Now, therefore, it is hereby stipulated that said defendant Henriette Speckart, will on or before the 1st day of August, 1909, deposit in said court, all said moneys and other property capable of delivering, which is in part the subject of litigation herein admitted to belong to the complainant, and which is held by said Henriette Speckart, as trustee for the com-

plainant, pending said litigation, or until further order of court; and it is further stipulated that pending the litigation or further order of court, a monthly allowance of $250 per month, payable on the first day of each month, beginning June 1st, 1907, be paid to the plaintiff out of said fund.''

This stipulation was confirmed by an order of court of the same tenor, July 30, 1909. The testimony in the present case also indicated that, pursuant to the stipulation and the order of the court, defendant's mother, as trustee, paid into the court on or about July 30, 1909, certificate No. 36, 3,333⅓ shares of the capital stock of the Olympia Brewing Company; certificate No. 74, 2,056⅔ shares of the capital stock of the Salem Brewery Association; certificate No. 74, 4,814⅔ shares of the capital stock of the Bellingham Bay Brewery; and certificate No. 79, 1,051 shares of capital stock of the Acme Brewing Company. The stocks so deposited were one third of the shares held by the trustee in the different corporations, and certificates therefor were issued to Harriet F. Speckart. The testimony therefore tended to show that the title to the stock passed to this defendant; that she was entitled thereafter to the dividends thereon and that she received such dividends and accepted the shares of stock as her property. On September 14, 1909, pursuant to a stipulation of the parties in that suit the court ordered $50,000 of the funds in the registry of the court deposited by Mrs. Speckart, to be paid to the complainant, Harriet F. Speckart, said payment to be ''without prejudice to the rights of any of the parties to the litigation herein pending,'' it being admitted, as the stipulation recites, ''that the complainant is entitled to receive at least the sum of $50,000 of the said funds at this time.'' Under these

stipulations and orders there was paid to the defendant, Harriet F. Speckart, $57,000, besides the deposit of the certificates of shares of stock. Afterwards the United States Circuit Court, preparatory to dismissing the complainant's bill, ordered the clerk to deliver to Henriette Speckart, the above-mentioned shares of corporation stock and all of the balance of the money on deposit. On account of this order, as we understand, the defendant claims that no right accrued to her by virtue of the shares of stock being deposited in the federal court. That decree, however, was afterwards reversed upon appeal and the cause remanded for the trial court to find the account: *Speckart* v. *Schmidt,* 190 Fed. 499 (111 C. C. A. 331).

5. In order to prove the value of the brewery stocks the plaintiff produced evidence of *bona fide* sales of stock of each of the corporations, during the summer of 1909, which indicated that the stocks had an aggregate value of $43,432.05. Counsel for the defendant objected and excepted to the introduction of such testimony. When it becomes necessary to ascertain the value of articles for which there is no open market, evidence of prices realized at sales of such articles held under conditions calculated to secure adequate returns is admissible, provided that the time of sale is not too remote to raise a logical inference: 16 Cyc. 1141 et seq; 13 Ency. of Ev. 512, 528; *Bump* v. *Cooper,* 20 Or. 527 (26 Pac. 848); *Chaperon* v. *Portland Electric Co.,* 41 Or. 39 (67 Pac. 928); *Portland* v. *Investment Co.,* 64 Or. 410 (129 Pac. 756). There was no error in admitting such testimony.

In the present case the trial court charged the jury, in effect, that if the plaintiff was at all times ready, able and willing to carry out the contract and was prevented, without his fault, by defendant from doing

so, then he would be entitled to his compensation. The court said:

"The court further instructs you that the language used in this contract, upon which Dolph seeks to recover, is, namely that 'The party of the second part does hereby agree and promise to pay to the party of the first part, out of the moneys and property which may come to her out of said estate, unconditionally and directly,' and the court charges you that if you find from a preponderance of the evidence in the case that she, in the suit brought by her in the federal court in the State of Washington against her mother and uncle, Leopold Schmidt, prior to the commencement of this action, that is prior to September 24, 1909, caused moneys and property from the estate of her father to be deposited in the registry of said court and said moneys and property were admitted to belong to and to be her property, then such of said moneys and property as were so admitted to belong to her and were deposited as her property and came to her within the meaning of the contract as I have outlined to you, then Dolph in this case is entitled to receive his commission thereon as provided in the contract."

Also:

"You are further instructed if you believe from a preponderance of the evidence in the case that the brewery stocks belonging to her father's estate and delivered by the defendants in the suit commenced by her, Speckart, as complainant, and against her mother and uncle Schmidt, for an accounting, were at her request deposited in the registry of the court in said cause, with the mutual understanding and agreement between all the parties to said litigation that said stocks belong to her, then in that event said stocks came to the plaintiff within the purview of the contract of January 12, 1907, in litigation herein, and became the property of the defendant constituting an accounting as to said property so deposited, and the

94 Or. —36

plaintiff herein would be entitled to his commission thereon as stipulated in the contract.''

To these instructions exceptions were duly saved by counsel for defendant. Defendant requested the court to instruct the jury that the evidence showed that the plaintiff was not entitled to recover from the defendant under the contract, until the defendant shall have received certain sums of money, or certain property directly and unconditionally, and that there is no evidence in the case showing that the defendant has so received any money or property. To the refusal to so instruct the jury, counsel for defendant saved an exception.

Upon the trial of the cause defendant offered to prove by the testimony of her attorney, J. W. Robinson, that the defendant's mother, at the time of the proceedings in the federal court, contended that the amount of $57,000, which had been paid the defendant under the stipulation of September 13, 1909, and the order of the court of the same date, was not the correct amount and that part of it should be refunded.

6–9. From an examination of the stipulation and order, quoted in part above, it will be readily seen that the evidence tendered was in direct conflict with the written stipulations of the parties, upon which the order of the court was based. For this reason the trial court properly excluded the testimony. A further reference to the stipulation also discloses that it was plainly agreed, in the federal court, that the complainant therein, Harriet F. Speckart, the defendant herein, was entitled to receive at least $50,000. There is no dispute, as we understand, but that she received at least $7,000, as monthly allowances. The purport of the stipulation was that the $67,535.74 was the largest amount Henriette Speckart represented

could be allowed her daughter, by the court, but she unreservedly added that her daughter was entitled to receive at least $50,000 from her father's estate. Should the plaintiff defer his action until the rendition of the account by Henriette Speckart in the federal court is completed, the amount received by defendant might be enlarged. We do not understand that the amount could be reduced below $50,000. The clause contained in the stipulation "said payment to be without prejudice to the rights of any of the parties to this suit," refers to litigation as to the balance of the fund, and not to the $50,000 paid to defendant nor to the $7,000 paid her as monthly allowances. The court, in effect, so charged the jury and we approve the charge. The learned author of Black's Law Dictionary defines "without prejudice," page 1243, as follows:

"Where an offer or admission is made 'without prejudice,' or a motion is denied 'without prejudice,' it is meant as a declaration that no rights or privileges of the party concerned are to be considered as thereby waived or lost except so far as may be expressly conceded or decided."

It seems that Henriette Speckart was to deposit the property "admitted to belong to the complainant [Harriet F. Speckart], and which is held by said Henriette Speckart, as trustee for the complainant"; that certificates for the one-third part of the shares of stock, belonging to the estate of the defendant's father, were issued to Harriet F. Speckart as shown by the books of the several corporations and that dividends were paid thereon and received by defendant. Therefore the jury might fairly infer that such shares of stock were accepted by the defendant as her property. That they were permitted to remain

in the registry of the court we do not deem material. Such a repository would not change the ownership. This disposition of the shares of' stock, so long as they were the property of the defendant, according to the finding of the jury made pursuant to the tenor of the testimony, was of the same force and effect as though such shares had been lodged in a bank for defendant and the dividends thereon had been credited to her account. The dry wave which has swept over the country renders the consideration as to the brewery stocks something in the nature of a *post-mortem* examination. Pursuant to the contract made between plaintiff and defendant, in regard to plaintiff's commission, we think the court was right in admitting testimony as to the value of the stocks at the time they were issued to defendant.

To restate as we read the record, the testimony, if believed by the jury, proved that the defendant, Harriet F. Speckart, received in money and property out of the estate of her deceased father, "unconditionally and directly," the amount upon which the jury computed the commission of plaintiff.

10–13. Written contracts should be construed from the standpoint of the parties when they were contracting and be so interpreted as to give effect to all the provisions, if possible: *Hildebrand* v. *Bloodsworth,* 12 Or. 75 (6 Pac. 233) ; *Arment* v. *Yamhill County,* 28 Or. 474 (43 Pac. 653) ; *Duniway* v. *Hadley,* 91 Or. 343 (178 Pac. 942)'. A party who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong, by insisting on proof which by reason of his breach is unobtainable: *In re Stern,* 116 Fed. 604–608 (54 C. C. A. 60) ; *Allen* v. *Field,* 130 Fed. 641–653 (65 C. C. A. 19) ; *Critchfield* v. *Julia,* 147 Fed. 65–73 (77 C. C. A. 297). Where

one employs an attorney and makes an express valid contract stipulating for the compensation which the attorney is to receive for his services, such contract is, generally speaking, conclusive as to the amount of such compensation. A client has the unquestionable right to terminate the relationship between himself and his attorney, yet where an attorney is prematurely discharged by the client, or is otherwise wrongfully prevented from performing the professional duties for which he was employed, without fault on the part of the attorney, the latter is entitled to compensation. This is so even though the arrangement was for a contingent fee, provided the contingency has happened. The client, by wrongfully preventing the performance of the acts which entitled the attorney to the specific compensation, becomes liable in damages in such amount: 2 R. C. L., p. 1047, § 129, and p. 1049, § 131; 6 C. J., p. 724, § 292; *Reynolds* v. *Clark County,* 162 Mo. 680 (63 S. W. 382) ; *Bartlett* v. *Odd Fellows' Sav. Bank,* 79 Cal. 218 (21 Pac. 743, 12 Am. St. Rep. 139). The motion for a nonsuit was rightly denied.

In the case of *Larned* v. *City of Dubuque,* 86 Iowa, 166 (53 N. W. 105), the Supreme Court of Iowa had under consideration a contract similar to the one in the case at bar. That court said:

"The full performance of the contract on the part of intervener was prevented by Mrs. Porter, and she cannot thus rob intervener of the benefits of the contract which would have accrued to him in case he had been permitted to fully perform on his part. Her act in settling with the defendant city was a waiver of her right to insist on the collection of the full amount of the bonds and interest, as a prerequisite to his receiving the compensation provided in the contract."

The testimony indicated and the jury evidently found that full performance of the contract on the part of the plaintiff was prevented by the defendant. She should not be allowed to thus deprive the plaintiff of the benefits of the contract which would have accrued to him in case he had been permitted to fully perform on his part, as he was ready, able and willing to do: *Brodie* v. *Watkins,* 33 Ark. 545 (34 Am. Rep. 49–51); *Scheinesohn* v. *Lemonek,* 84 Ohio St. 424 (95 N. E. 913, Ann. Cas. 1912C, 737, and note at page 741). In *Webb* v. *Trescony,* 76 Cal. 621 (18 Pac. 796), the court says:

"Where, from the nature of the contract, as in this case, no possible mode is left for ascertaining the damage, we will have presented the anomalous case of a wrong without a remedy, unless we adopt the only measure of damages which remains, and that is the price agreed to be paid."

This rule is invoked where the defendant not only breaks the contract but also deprives the plaintiff of showing the amount of injury under the general rule. By reason of this, the defendant ought not to complain that a different rule is invoked when it is the only way of making her responsible for her lack of good faith. See, also: *Carlisle* v. *Barnes,* 102 App. Div. 573 (92 N. Y. Supp. 917); *Coffee* v. *Meiggs,* 9 Cal. 364; *Tyler* v. *March,* 1 Day (Conn.), 1; *Steinberg* v. *Gebhardt,* 41 Mo. 520; *Danley* v. *Williams,* 16 Wis. 581; *Moyer* v. *Cantieny,* 41 Minn. 242 (42 N. W. 1060, 1061); *Kersey* v. *Garton,* 77 Mo. 645; *Shannon* v. *Comstock,* 21 Wend. 457 (34 Am. Dec. 262).

14, 15. It was the duty of the trial court to construe the written stipulation and orders in the federal court pertaining to the matter. This the learned trial judge did and plainly charged the jury in regard thereto.

The case was fairly submitted to the jury. The jury found for the plaintiff. Under our Constitution, where there is any competent evidence to support such a verdict, we are precluded from disturbing the same.

Finding no error in the record, the judgment of the lower court is affirmed.                          AFFIRMED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.