In the Matter of the Application of JAMES T. DRISCOLL, an Attorney and Counselor at Law, etc.

Supreme Court, Erie County, March 12, 1928.

Attorney and client — lien for services — petitioner was engaged on January 8, 1925, as attorney to represent respondent in condemnation proceedings — letter dated March 27, 1925, terminated contract of retainer — attorney limited in his recovery to actual service rendered by him between aforesaid dates — services rendered before his retainer or after his discharge are no part of services for which he has lien.

Petitioner, an attorney engaged by respondent January 8, 1925, to represent the latter in condemnation proceedings affecting his property and notified by letter on March 27, 1925, that the relation of attorney and client was at an end, is limited in his recovery for services to the actual services rendered by him from the date of his retainer to the date of his discharge. Services rendered before his retainer or after his discharge are no part of the services for which he has a lien.

The client properly discharged his attorney with or without cause and the letter operated as such discharge.

Supreme Court, March, 1928.    [Vol. 131

The fact that the attorney attended the hearings before the condemnation commissioners and that a certain expert witness employed by petitioner prior to the proceeding was used on the hearing did not keep alive the relation of attorney and client.

The fact that the retainer fixed the fee does not entitle petitioner to the amount thereof, since an attorney discharged with or without cause cannot recover for a breach of contract but is limited to a claim upon *quantum meruit*.

What petitioner actually did, not what he might have done nor what he did before the retainer or after his discharge, is the measure of damages.

The finding of the referee, if he did so find, that the amount of the value of petitioner's services for less than three months is the same as that stipulated in the retainer contract for the entire proceedings is not only erroneous upon its face, but is not supported by competent evidence.

The report of the referee is, therefore, set aside as contrary to law and a new hearing granted.

APPLICATION to confirm the report of a referee appointed to determine the amount of the petitioner's lien as attorney for respondent in condemnation proceedings, taken by the city of Buffalo, to acquire, among others, certain premises owned by respondent.

*Charles W. Strong,* for the petitioner.

*Francis Di Bartolo,* for the respondent.

HINKLEY, J.  On January 8, 1925, respondent gave petitioner a written option to purchase the former's residence premises for $16,500, the option to expire July 1, 1925.

On the same day the parties executed and delivered the following agreement:

" RETAINER

" BUFFALO, N. Y., *Jan. 8th,* 1925.

" I hereby retain JAMES T. DRISCOLL, to sell the premises herein described for the sum of Sixteen Thousand Five Hundred Dollars, and his compensation is to be ten per cent. of the purchase price. Any reduction in the purchase price must be with the consent of owner.

" If condemnation proceedings are instituted by the City of Buffalo, to acquire said premises, all expenses for searches, maps, surveys, investigations, expert real estate witnesses, contractors, and his legal services are to be included in said compensation and said compensation is to be a lien upon the purchase price of award.

" In the event that the condemnation proceedings are discontinued, or the City of Buffalo does not acquire premises described in option, it is understood that all costs and allowances are to be the compensation in full to said attorney.

" FRANK CIAPPA.

Witness

" R. M. AMATUZIO."

On March 27, 1925, respondent notified petitioner by letter that the relation existing between them of client and attorney was at an end. The respondent had a right to discharge his attorney, with or without cause, and that letter operated as such discharge. (*Matter of Dunn*, 205 N. Y. 398.)

From that time on until the commencement and to the end of the condemnation proceedings which were later commenced, respondent was represented by another attorney.

Certain pictures taken under the direction of the petitioner prior to the condemnation proceedings were used and a certain expert employed by petitioner prior to the condemnation proceedings was used upon the hearing before the commissioners to determine the value of respondent's property. Petitioner evidently attended all of the hearings before the condemnation commissioners, as he was interested in other parcels and claimed both a direct and a collateral interest in respondent's hearing, notwithstanding his discharge. These facts did not, however, keep alive the relation of petitioner to respondent as attorney and client.

The referee has determined, as indicated by his opinion, that " the attorney [petitioner] is entitled to the amount of the fees fixed by the retainer." There is no basis in law for the suggestion of the referee that the client could not relieve himself of the contract until he had made some tender of payment for the services rendered by his attorney. There could be no more clearly defined principle of law than that an attorney discharged with or without cause cannot recover for a breach of contract, but is limited to a claim upon *quantum meruit*. (*Martin* v. *Camp*, 219 N. Y. 170; 220 id. 653; 221 id. 631; *Matter of City of New York*, 219 id. 192.)

The referee suggests that petitioner had incurred expense and, therefore, this case comes within the exception set forth in *Martin* v. *Camp* (219 N. Y. 170, 176). The incurring of expense by the attorney prior to the notification of his discharge would not keep alive the contract after such discharge nor give the attorney a cause of action for a breach thereof. Such expenses would but be added to the amount earned upon *quantum meruit*.

Counsel for petitioner relies upon the *obiter dictum* of Presiding Justice JENKS in *Andrewes* v. *Haas* (160 App. Div. 421, 423): " If the client choose continuance and press on to success, the compensation in the first instance is determined by the agreed contingent fee, and this may be so even though meanwhile the attorney has been discharged."

It is significant that Judge CARDOZO, on the appeal of *Andrewes* v. *Haas* (214 N. Y. 255) ignores the above statement and almost

foretells the reversal of *Martin* v. *Camp* (161 App. Div. 610) by the later decision of the latter case (219 N. Y. 170).

The referee, in his written opinion, after stating that the petitioner is " entitled to the amount of his fees fixed by the retainer," which is an incorrect statement of the law, further said: " I would add, however, that in my opinion the evidence before me fairly establishes that the services rendered by the petitioner and the expenses incurred by him are reasonably worth that sum." This statement is misleading. In the *referee's report* he opines that the claim of petitioner for legal services is $1,274 under the written retainer. No one but the referee can say whether he intended that the statement in his written opinion as to the value of petitioner's services, based upon *quantum meruit*, was an afterthought, or whether he bases the opinion contained in his report upon both damages for breach of contract and *quantum meruit*, which were coincidentally the same sum.

Basing the referee's report on either breach of contract or *quantum meruit*, it is erroneous as matter of law. As above indicated, the amount of the petitioner's lien cannot be measured as by a breach of contract. Based upon *quantum meruit*, the value as fixed by the referee, if so fixed, at $1,274, whether based upon the evidence of petitioner's experts or otherwise, is erroneous.

The *quantum meruit* of petitioner's services is strictly and entirely limited to the *actual* services rendered by him from the date of his retainer until his discharge. Services rendered before his retainer and after his discharge are not a part of the services *for which he has a lien*. True, petitioner may have been able to do more work during that period by reason of his preliminary activities before he obtained his client, just as his actual services during that period may have been greater or more valuable by reason of his general legal training and experience. But what he actually did during that period is the measure of his services, not what he might have done, nor what he did before his retainer, nor after his discharge.

On January 8, 1925, when petitioner obtained from respondent his option, authority to sell and retainer for services as attorney in the event of condemnation proceedings, the board of education were interested in choosing a school site. On February 10, 1925, that board, by resolution, submitted three sites to the city council as available, one of which embraced the block containing respondent's premises. On or about March 27, 1925, the petitioner was discharged as attorney for respondent. It was not until July, 1925, that the council approved the block containing respondent's residence. It was not until March, 1926, that condemnation

commissioners were appointed to determine the value of the land.

The experts sworn by petitioner based their estimate of the value of petitioner's services to respondent upon other considerations than the actual services of petitioner as respondent's attorney from January 8, 1925, the date of his retainer, to March twenty-seventh or twenty-eighth, the date of his discharge.

This is a proceeding to condemn land, and it would appear that for a long time prior to January 8, 1925, and from that date until February 10, 1925, petitioner had been actively engaged and apparently claims to have influenced the board of education to select three sites, nearly all of which, according to some testimony, he controlled by option or otherwise. From that time until his discharge as attorney for respondent on March 26 or 27, 1925, there is nothing to indicate whether or not he was serving the respondent in the exercise of his influence upon the council for the selection of the block containing petitioner's property to the exclusion of the other two blocks in which petitioner was also interested. For all that appears, it may have been mere luck that the block containing respondent's premises was chosen, and even that may have been good luck or bad luck for respondent, as one may believe that he desired that his property be taken from him or regrets that it has been condemned.

The finding of the referee, if he did so find, that the amount of the value of petitioner's services for less than three months is the same as that stipulated in the contract for the entire proceedings, is not only erroneous upon its face, but the record does not contain sufficient competent evidence to support such a finding. The court is unable, from the testimony as presented before the referee, to determine the proper value of petitioner's services without further testimony.

The report of the referee is, therefore, set aside as contrary to law, and a new hearing granted before Mr. Merton S. Gibbs as referee to determine the amount of the petitioner's lien, in accordance with the order of Mr. Justice PIERCE. Such referee shall take proof and report to this court, with his opinion, the reasonable value of the petitioner's actual services rendered to respondent as his attorney from the date of his retainer, to wit, January 8, 1925, to his discharge by the letter of respondent, dated March 27, 1925.

Order may be entered herein in accordance with this opinion, with costs to abide the event.